**James P. FREE, Jr., Petitioner–Appellant,**

v.

**Howard A. PETERS, III and Neil F. Hartigan, Respondents–Appellees.**

No. 95–1692.

United States Court of Appeals, Seventh Circuit.

Submitted March 21, 1995.

Decided March 21, 1995.[1]

Published March 29, 1995.

Kimball R. Anderson (submitted), Timothy P. O'Connor, Bruce R. Braun, Winston & Strawn, Chicago, IL, for petitioner-appellant.

Arleen C. Anderson, Paula Giroux, Asst. Attys. Gen., Vincenzo Chimera, Chicago, IL, for respondents-appellees.

Before POSNER, Chief Judge, BAUER and CUDAHY, Circuit Judges.

PER CURIAM.

Petitioner James P. Free, Jr. is scheduled to be executed by the State of Illinois on March 22, 1995. He filed a motion under Fed.R.Civ.P. 60(b) in the district court and sought a stay of the execution pending the U.S. Supreme Court's decision whether to grant a writ of certiorari in *Lackey v. Texas,* — U.S. ——, 115 S.Ct. 1274, 131 L.Ed.2d 192 (1995) which raises the issue of

> [w]hether the execution of a death sentence constitutes cruel and unusual punishment under the Eighth Amendment as understood by the Framers if, as a result of inordinate delay not attributable to his own conduct, the condemned inmate is forced to endure nearly two decades on death row, during which time his execution is repeatedly rescheduled. Cert. Pet. at ii.

Dist. Ct. order of March 20, 1995.

The district court found the *Lackey* case was "clearly and materially distinguishable, and thus can provide no relief to Free." We agree. In *Lackey* the majority of the time that the defendant spent on death row was a result of very protracted proceedings in his mandatory direct appeals to the state supreme court. His discretionary state and federal actions accounted for relatively few years.

Free's mandatory direct appeal, on the other hand, was disposed of in about three and one half years in 1983. The remaining years since then have resulted from Free's pursuit of his discretionary appeals in both state and federal court. We agree with the district court that any inordinate delay in the execution of Free's sentence is directly attributable to his own conduct. The circumstances of this case are clearly distinguishable from *Lackey.* The judgment of the district court is AFFIRMED. Petitioner's Emergency Motion for a Stay of Execution is DENIED. The mandate shall issue immediately.

1. This opinion was originally released in type- script form.

CUDAHY, Circuit Judge, dissenting with respect to emergency stay of execution:

Free has requested an emergency stay of execution of his death sentence pending the Supreme Court's decision scheduled for March 24, 1995 (three days from today) on whether to grant a writ of certiorari in *Lackey v. Texas*, — U.S. ——, 115 S.Ct. 1274, 131 L.Ed.2d 192 (1995). I would grant an emergency stay on the very limited basis requested.

Free has been on death row for fifteen and a half years since his sentence of death was originally imposed. He is scheduled to be executed in the early morning hours of March 22, 1995 (tomorrow). His death sentence was vacated by the district court in 1992 after hearings before a Magistrate Judge. The death penalty was reimposed by this court in 1993.

Free claims that at least six years of his time on death row are not attributable to his own conduct. He further asserts that, including the ten-year period of time he sought post-conviction relief as provided by Illinois law at the time in question, 725 ILCS 5/122–1 *et seq.*, only a small fraction of this time on death row is attributable to his conduct. The Illinois Supreme Court set three execution dates for Free prior to the present one.

As Judge Aspen has pointed out, Free's case seems quite factually distinguishable from that of Lackey—a Texas prisoner likewise held for many years on death row. But the Supreme Court has up to now announced no law governing allegedly excessive death-row delay, exacerbated by the setting of multiple execution dates and similar arguably painful events, as possible violations of the Eighth Amendment.

It seems to me that in light of the exceedingly minimal stay requested and the potentially resounding impact of a grant of certiorari in the *Lackey* case, an emergency stay should be granted. A decision in *Lackey* might create a wholly new dimension in death cases.

Weighing the rather trivial consequences of a grant of an emergency stay against the grave and irrevocable consequences of a denial, the grant of the request of the emergency stay is appropriate. *Cf. Pratt & Morgan v. Attorney General of Jamaica*, Privy Council Appeal No. 10 of 1993, 3 WLR 995, 143 NLJ 1639, 2 AC 1, 4 All ER 769 (Nov. 2, 1993) (en banc) ("in any case in which the execution is to take place more than five years after sentence there will be strong grounds for believing that the delay is such as to constitute inhuman or degrading or other treatment"); *Coleman v. Balkcom*, 451 U.S. 949, 952, 101 S.Ct. 2031, 2033, 68 L.Ed.2d 334 (1981) (Stevens, J., concurring in the denial of certiorari); *Solesbee v. Balkcom*, 339 U.S. 9, 14, 70 S.Ct. 457, 460, 94 L.Ed. 604 (1950) (Frankfurter, J., dissenting); *Furman v. Georgia*, 408 U.S. 238, 288–89, 92 S.Ct. 2726, 2751–52, 33 L.Ed.2d 346 (1972) (Brennan, J., concurring); *People v. Anderson*, 6 Cal.3d 628, 100 Cal.Rptr. 152, 493 P.2d 880, *cert. denied*, 406 U.S. 958, 92 S.Ct. 2060, 32 L.Ed.2d 344 (1972); *District Attorney for Suffolk District v. Watson*, 381 Mass. 648, 411 N.E.2d 1274, 1289–95 (1980).

I would therefore grant an emergency stay pending the decision of the Supreme Court with respect to certiorari in *Lackey*.