Leif C. HALVORSEN, Appellant,

v.

COMMONWEALTH of Kentucky, Appellee.

No. 2004–SC–000017–MR.

Supreme Court of Kentucky.

Aug. 23, 2007.

Rehearing Denied Aug. 21, 2008.

Susan Jackson Balliet, Julia K. Pearson, Assistant Public Advocate, Department of Public Advocacy, Frankfort, KY, Counsel for Appellant.

Gregory D. Stumbo, Attorney General of Kentucky, Louis F. Mathias, Jr., Tami Renee Stetler, Assistant Attorneys General, Criminal Appellate Division, Office of the Attorney General, Brian T. Judy, Cabinet for Health and Family Services, Office of Legal Services, Frankfort, KY, Counsel for Appellee.

Opinion of the Court by Chief Justice LAMBERT.

Appellant, Leif Halvorsen, and his co-defendant, Mitchell Willoughby, were convicted of the murders of three acquaintances, Joe Norman, Norman's girlfriend, Jacqueline Greene, and Joey Durrum. One victim was found in the Kentucky River and the two other victims were found on the side of the bridge overhead. Each victim had been bound with a blue and yellow rope and shot to death. Appellant was sentenced to death on two of the murder counts and to life imprisonment on the third count. The details of the murders are more fully set forth in *Halvorsen v. Commonwealth*[1] wherein this Court affirmed Appellant's convictions and sentences on direct appeal.

---

1. 730 S.W.2d 921 (Ky.1987).

Appellant filed a post-conviction motion pursuant to RCr 11.42 asserting various claims of ineffective assistance of counsel. After an evidentiary hearing on specified claims, the trial court denied the RCr 11.42 motion as well as his subsequent motion under RCr 59.05. It is from the denial of these post-conviction motions that Appellant now seeks relief in this Court.

Initially, we address the Commonwealth's request that certain affidavits attached to Appellant's brief be stricken because they were never presented to the trial court. While it is true that these affidavits were executed after the RCr 11.42 hearing, it appears that the trial court granted Appellant's motion to supplement the record with most of these attachments, and simply found that they did not change its ruling nor did they warrant further hearings. Thus, we will deny the Commonwealth's motion to strike and our review will include the items attached to Appellant's brief that were also included in his motion to supplement.

■ To prevail on an RCr 11.42 motion, a movant must convincingly establish that he was deprived of a substantial right justifying the extraordinary relief afforded by post conviction proceedings.[2] More specifically, to prevail on a claim of ineffective assistance of counsel, a movant must show that he was prejudiced by counsel's deficient performance.[3] Deficient performance is that which falls below an objective standard of reasonableness, and prejudice must be proven by showing a reasonable probability that the result of the proceedings would have been different absent the deficient performance.[4]

■ Appellant advances several arguments within a broad assertion that the "jury never learned who he was, and never heard his story." The principal focus of this contention revolves around trial counsel's alleged failure to consult with Appellant, which resulted in a failure to investigate and present evidence that would have supported the defenses of intoxication, duress, and extreme emotional disturbance (EED).

"Counsel has a duty to make reasonable investigations or to make a reasonable decision that makes particular investigations unnecessary."[5] Trial counsel testified at the RCr 11.42 hearing, but he had turned Appellant's complete file over to the Department of Public Advocacy several years ago and his personal recollection of the proceedings was understandably limited. At the post-conviction hearing, the Commonwealth pointed out that nearly every witness Appellant called was a convicted felon or would have had to admit to a felony had he or she testified in 1983. Nevertheless, aside from trial counsel's testimony that, in general, he did not feel that other drug abusers would have had anything positive to contribute, he did not have a specific memory of interviews or investigations that he actually conducted or of the information Appellant gave him that might have justified his making a reasonable decision that further interviews or investigation was unnecessary. Given the ease with which we can dispose of this issue based on *Strickland's* prejudice prong, we do so and avoid the difficulty of evaluating trial counsel's performance in this regard. Stated differently, Appellant has failed to show that any omitted investi-

2. *Haight v. Commonwealth*, 41 S.W.3d 436 (Ky.2001).

3. *Strickland v. Washington*, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984).

4. *Id.*

5. *Id.* at 690, 104 S.Ct. 2052.

gation would have probably changed the result.

We recognize that failure to discover mitigating evidence may prejudice a defendant and require the reversal of his conviction and/or sentence.[6] Specifically, in *Wiggins v. Smith*,[7] a similar argument was made with respect to mitigation evidence, although at a different phase of the trial. The United States Supreme Court found the error to have caused sufficient prejudice to grant Wiggins relief. The evidence that could have been presented on Wiggins' behalf included his subjection to severe privation and abuse during the first six years of his life while he was in the custody of his alcoholic, absentee mother, and his suffering physical torment, sexual molestation, and repeated rape during his subsequent years in foster care.

In the case at bar, Appellant presented the testimony of several witnesses at the RCr 11.42 hearing who would have testified on his behalf at trial, but the substance of their testimony was a far cry from that in *Wiggins*. We first examine the RCr 11.42 testimony in the context of evidence of extreme emotional disturbance. At the time of Appellant's crimes, Kentucky law regarding extreme emotional disturbance was still in its infancy and largely undefined.[8] Our subsequent refinement of EED jurisprudence has narrowed the circumstances which may establish EED.[9] However, Appellant failed to present any evidence at his RCr 11.42 hearing that would have supported a finding of EED even under our earliest and most expansive interpretation of EED.

Specifically, Appellant's parents, who had testified at trial, also testified at the post-conviction hearing. However, with the exception of Appellant's sister, a psychologist, and a therapist in an outpatient drug rehabilitation program, the additional witnesses who testified at the post-conviction hearing were either former co-workers or casual acquaintances, most of whom had encountered Appellant in drug-related interactions. The substance of these witnesses' testimony was cumulative and demonstrated only that after Appellant's marriage ended, he became depressed and began a downward spiral into heavy drug abuse.

Oscar "Clark" Hessell testified to Appellant's increased drug usage after his divorce. Henry Mazyck, another co-worker testified to a drastic change in Leif's character after his divorce. Buford Disponette testified that Appellant did contract work for him several years before the murders and that Appellant changed when he began doing hard drugs after his divorce. Appellant's sister, Debra Mauldin testified that Appellant became depressed when his marriage failed and he began heavy drug

---

6. *Wiggins v. Smith*, 539 U.S. 510, 123 S.Ct. 2527, 156 L.Ed.2d 471 (2003).

7. 539 U.S. 510, 123 S.Ct. 2527.

8. *See, e.g., Edmonds v. Commonwealth*, 586 S.W.2d 24, 27 (Ky.1979) (declining to define EED beyond "It is suffice to say that we know it when we see it.") *overruled by Wellman v. Commonwealth*, 694 S.W.2d 696 (Ky.1985); *But see Ratliff v. Commonwealth*, 567 S.W.2d 307 (Ky.1978) (holding that evidence of severe mental illness, particularly paranoid schizophrenia, and a likelihood of psychosis at the time of the crime, warranted an in-struction on EED), *overruled by Wellman v. Commonwealth*, 694 S.W.2d 696 (Ky.1985) (holding that mental illness, even if severe, was insufficient, standing alone, to warrant an EED instruction and that the absence of EED was not an element of murder.)

9. *See, e.g., Wellman*, 694 S.W.2d 696 (requiring "probative, tangible and independent evidence of initiating circumstances, such as provocation at the time [of the crime]" for an EED instruction, even where there is evidence of mental illness).

usage, and Susan Craft, Appellant's ex-wife, gave similar testimony.

Additional witnesses who testified at Appellant's 11.42 hearing were Dr. Eric Drogin, a psychologist and Edwin Hackney, a therapist in the Comprehensive Care Center's outpatient drug rehabilitation program. Dr. Drogin had never met Appellant and gave general testimony regarding potential avenues that should be explored to support mitigation for a defendant with a history of drug abuse. Hackney testified that Appellant had been diagnosed with substance and alcohol abuse as well as with an anti-social personality disorder while in his drug rehabilitation program, but that his treatment was terminated at the end of 1982 due to Appellant's failure to have contact with the agency since July of 1982.

Appellant's depression over his divorce and his increased drug usage were brought out at trial through the testimony of Appellant's father, a former co-worker, Jeff Luce, and through cross-examination of witnesses for the Commonwealth. Additionally, Appellant's father had testified to a recent hospital stay resulting from Appellant's drug use and to the fact that Appellant had lost his job a couple of weeks before the murders. Trial counsel introduced some of Appellant's medical records and employment records through this witness. Even assuming deficient performance by trial counsel, Appellant has not shown any prejudice. Failure to identify additional witnesses to present cumulative testimony cannot be regarded as prejudicial.

■ Likewise, an examination of the RCr 11.42 testimony concerning duress reveals no additional evidence that could have been presented at trial. The only

RCr 11.42 testimony that even remotely relates to duress was the testimony of Darrell Bachtelle, a former co-worker, Susan Craft, Appellant's ex-wife, and Appellant himself. Bachtelle merely testified that Appellant began to change when he started hanging out with Mitchell Willoughby. Craft testified that Appellant was easily manipulated. However, Appellant, himself, testified at the penalty phase of trial that he was frightened of Willoughby and that he was acting under Willoughby's influence at the time of the murders. So, again, no additional evidence was unearthed in the RCr 11.42 proceeding that that would have supported a finding of duress. Nevertheless, Appellant argues that trial counsel should have raised the issue of Willoughby's influence over him at the guilt/innocence phase as opposed to the penalty phase. Trial counsel testified, however, that he did discuss this possibility with Appellant, but the only way to elicit this evidence was from Appellant himself. Trial counsel testified that a strategic choice was made to keep Appellant off the stand, inter alia, so that he could argue innocence based on the fact that no one actually witnessed Appellant discharge a firearm. Furthermore, Willoughby made statements taking all the responsibility for the shootings. As such, Appellant has not "overcome the presumption that, under the circumstances, the challenged action 'might be considered sound trial strategy.'"[10] Duress is not a defense to intentional murder nor is it an available defense for one who "intentionally or wantonly placed himself in a situation in which it was probable that he would be subjected to coercion."[11] Therefore, eliciting evidence of duress at the penalty phase as opposed to the guilt/innocence phase was reasonable trial strategy.

---

10. *Strickland,* 466 U.S at 689, 104 S.Ct. 2052.

11. KRS 501.090.

It is true that an abundance of testimony was offered at the RCr 11.42 hearing regarding Appellant's drug use. Darrell Bachtelle testified that he worked with Appellant for about two years and could not recall a time that Appellant was not under the influence of intoxicants. Clark Hessell testified that he had observed Appellant ingesting drugs including downers, Quaaludes and cocaine. Steve Meadows was a childhood friend of Appellant's who testified that when he would occasionally run into Appellant it was obvious that Appellant was on drugs. Appellant's friend, Lee Story, testified that he had witnessed Appellant smoke marijuana and inject various drugs. In addition to this testimony concerning Appellant's general drug usage, two witnesses testified that they had seen Appellant in a state of drug intoxication as recently as two weeks prior to the murders. Buford Disponette also saw Appellant three or four days before the murders, but gave no specific testimony regarding Appellant's state of mind or appearance. Finally, an acquaintance, Matthew Estepp, testified that he had seen both Appellant and his co-defendant Willoughby earlier the same day of the murders. Estepp stated that he saw Appellant inject liquid morphine and melted Demerol and that Estepp had purchased and injected morphine that day as well. While Estepp's testimony would have been relevant evidence of Appellant's intoxication the day of the murders, it was cumulative of testimony that was presented at trial. At trial, Willoughby testified to the drugs that he and Appellant had used the day in question. Accordingly, Appellant has not demonstrated that he was prejudiced by the failure to put on additional drug abuse evidence.

■ Concerning Appellant's allegation that trial counsel failed to adequately consult with him, Appellant testified that counsel spent a total of about eight hours with him in trial preparation. While trial counsel speculated that he had spent more than eight hours in preparation, he was without his records and did not have a specific memory of the time involved. Nevertheless, the record supports that trial counsel discussed with Appellant the details of the crimes, whether or not the defense of duress would be viable at the guilt/innocence phase, and that trial counsel spent time, in addition to meetings with Appellant, in preparation for trial. Trial counsel had interviewed a friend and co-worker of Appellant's as well as Appellant's father, both of whom served as defense witnesses. Thus, Appellant has not shown that trial counsel's performance was constitutionally deficient in this regard. Moreover, the prejudice Appellant alleges to have suffered due to the alleged inadequate consultation is the failure of trial counsel to locate those witnesses who testified at the RCr 11.42 hearing. As outlined hereinabove, Appellant was not prejudiced by the failure to call these additional witnesses.

■ Appellant's next allegation of ineffectiveness is trial counsel's failure to obtain an independent expert psychologist and to engage a pharmacologist. Appellant was examined by state-appointed expert, Dr. Schwartz, and found to be competent to stand trial. Additionally, Dr. Schwartz was already familiar with Appellant as he had been Appellant's physician at the Comprehensive Care Center's outpatient treatment program. Trial counsel testified that he relied on Dr. Schwartz's competency evaluation and simply did not believe that Dr. Schwartz's report suggested the need for any further evaluation.

Both the U.S. Supreme Court [12] and this

12. See *Ake v. Oklahoma*, 470 U.S. 68, 105   S.Ct. 1087, 84 L.Ed.2d 53 (1985).

Court [13] have granted relief to indigent defendants who were denied funding for an independent expert psychologist, but only in circumstances where the defendant's sanity was at issue. In *Ake v. Oklahoma*,[14] the U.S. Supreme Court stated, "When the defendant is able to make an ex parte threshold showing to the trial court that his sanity is likely to be a significant factor in his defense, the need for the assistance of a psychiatrist is readily apparent." And in *Binion v. Commonwealth*,[15] this Court, relying on *Ake*, granted Binion relief for the trial court's failure to appoint or provide funding for an independent expert psychiatrist. However, the instant case is distinguishable in two significant respects. First, *Ake* and *Binion* addressed the state's duty to appoint or provide funding for an independent expert to an indigent defendant. Here, Appellant had private counsel, rendering the inquiry one of ineffective assistance of counsel.[16]

Of greater significance, however, Appellant has failed to offer evidence even remotely similar that in *Ake* or *Binion*. In *Ake*, as a result of the defendant's bizarre behavior at arraignment, the trial court *sua sponte* ordered a psychiatric examination, whereupon the defendant was determined to be incompetent to stand trial and committed to a mental hospital for six weeks. He was subsequently declared competent to stand trial on the condition that he continue to be sedated with an antipsychotic drug. In *Binion*, the defendant had a long history of psychiatric treatment and hospitalization, including previous prescriptions for antipsychotic

drugs to control the same type of delusions he was alleged to have been experiencing at the time of his crime. An independent evaluation had also noted a possibility that the defendant had organic brain damage.

In the instant case, the evidence presented at the RCr 11.42 hearing, summarized above, is wholly insufficient to have raised an issue concerning Appellant's sanity. In addition to this evidence, however, the trial court granted Appellant's motion to supplement the record with, *inter alia*, subsequent affidavits of Dr. Eric Drogin and Dr. E. Don Nelson, despite the affidavits being based on an evaluation of Appellant conducted four years after the RCr 11.42 hearing. Regarding these affidavits, the trial court concluded, "Trial counsel discussed drug usage with an expert and relied on his opinion. Although the Court permitted Movant to supplement the record with affidavits from other experts, the Court finds that experts have different opinions and trial counsel did not have a duty to seek all opinions of experts, counsel relied on the opinion of an expert of his choice in light of Movant's damning statements [that he intentionally shot two people]." We agree with the trial court's determination on this issue. Appellant suggests that trial counsel should have sought additional experts "in light of his client's words about how he felt that night: 'panicked,' 'scared,' and the copious amounts of drugs he had been ingesting." We fail to discern how these facts should have reasonably alerted trial counsel of the need for additional experts. "Competent representation does not demand that counsel seek repetitive examinations of Appel-

13. See *Binion v. Commonwealth*, 891 S.W.2d 383 (Ky.1995).

14. 470 U.S. at 82–3, 105 S.Ct. 1087.

15. 891 S.W.2d 383.

16. See *Harper v. Commonwealth*, 978 S.W.2d 311, 314 (Ky.1998) (distinguishing the inquiry of "whether the trial court had the responsibility to provide an expert, [from] whether counsel was ineffective in failing to retain an independent expert to assist in the defense.").

lant until an expert is found who will offer a supportive opinion." [17]

Moreover, Appellant has failed to demonstrate any prejudice from the lack of additional experts at trial as the findings offered in the supplemental affidavits are largely inconclusive. Although Dr. Drogin rendered a broad finding that there was "evidence of neuropsychological impairment, including memory deficits and other indicia of organic dysfunction" that most likely resulted from Appellant's chronic substance abuse, the finding was of limited utility as Dr. Drogin's resulting conclusion was only that more evaluation and testing were warranted. Further, Dr. Drogin described the phenomenon of "Emotional Contagion," but concluded only that administering the emotional contagion scale could shed additional insight into Appellant's susceptibility to the phenomenon. Dr. Drogin's last observation was simply that there were conflicting opinions as to whether Appellant had anti-social personality disorder.

Dr. Nelson, a professor of clinical pharmacology, interviewed Appellant but his findings were, likewise, of limited utility. After recounting Appellant's history of long-term drug abuse as well as those drugs which Appellant ingested on the day of the murder, Dr. Nelson concluded that Appellant's judgment at the time of the shooting would have been impaired. He cited Appellant's inability to recall the events the morning of the murders to support the conclusion that the drugs had serious effects on his mental processes. Nevertheless, as the Commonwealth points out, Appellant was able to recall the events of the actual murders in great detail.

Another ground for Appellant's contention that trial counsel should have secured

a pharmacologist is that Appellant had been exposed to industrial solvents during his employment at Frantz Mechanical. At the RCr 11.42 hearing, Victor Sabo, a former coworker, testified that he and Appellant worked with toxic glue and cleaning solvents at Frantz. Another co-worker stated that the glue made one "high." Sabo testified that he became ill and lost his sense of smell due to the odor of these materials. Dr. Nelson stated that these solvents are known to impair judgment and mental functioning when in the body. However, he did not elaborate on whether they may have been in Appellant's system during the murders which was more than two weeks after Appellant had been fired from the Frantz job. In fact, he made no specific findings in relation to Appellant. Again, Appellant has not shown that trial counsel's failure to retain additional experts was unreasonable nor has he demonstrated any prejudice therefrom. This contention is without merit.

■ Appellant next complains that trial counsel failed to request adequate instructions. Specifically, Appellant contends that the absence of extreme emotional disturbance was an element of murder in 1983. Thus, the jury should have been instructed that the Commonwealth was required to prove its absence beyond a reasonable doubt. Though we do not agree with Appellant's contention, it does deserve a more thorough analysis than the Commonwealth gives it in its brief.

In *Gall v. Parker*[18] the U.S. Court of Appeals for the Sixth Circuit reversed the U.S. District Court's denial of habeas corpus relief based on the prosecution's failure to prove the absence of extreme emotional disturbance at trial. The court

17. *Id.* at 315.

18. 231 F.3d 265 (6th Cir.2000), *superseded by statute on other grounds as stated in Bowling v. Parker,* 344 F.3d 487 (6th Cir.2003).

noted that Gall had presented evidence of a severe psychotic disorder which was sufficient at that time to establish EED. On direct appeal, this Court held that Gall's showing had been insufficient to place the burden on the Commonwealth.[19] However, the Sixth Circuit held that the absence of EED was an element of murder under Kentucky law at the time of Gall's offense and trial and that the burden had been improperly shifted in Gall's case, violating the framework set out in *In re Winship*[20] and *Mullaney v. Wilbur*.[21]

Notwithstanding this holding, however, the *Gall* court[22] recognized that this framework does not prevent state courts from requiring a defendant to present at least some evidence to raise an issue of fact to support a jury instruction. In fact, the early cases cited in *Gall* to demonstrate that Kentucky treated the absence of EED as an element of murder nevertheless required the defendant to present some evidence. Specifically, in 1979, this Court held "A failure to act under the influence of extreme emotional disturbance is an element of the offense of murder, *and if the evidence affords any basis upon which the jury could entertain a reasonable doubt as to whether appellant acted under the influence of extreme emotional disturbance*, the absence of that element must be enumerated as a part of the instruction on murder ..."[23]

In the instant case, Appellant failed to present any such evidence. As outlined hereinabove, Appellant's evidence was merely that he turned to drugs after his divorce. Thus, this case is more akin to *Slaughter v. Parker*,[24] wherein the evidence established, at most, that Slaughter panicked during the crime. Slaughter presented no evidence of mental illness or extreme emotional disturbance. The Sixth Circuit found this to be a material factor distinguishing *Slaughter* from *Gall*. A similar distinction exists in this case.

Moreover, this Court's decision in *Gall* was rendered in 1980, more than two years before Appellant's offenses. Thus, our interpretation of Kentucky law as stated in *Gall* governed Appellant's case. Appellant relied on pre-*Gall* cases that were modified by our holding in *Gall* and expressly overruled in *Wellman v. Commonwealth*.[25] While we recognize that Wellman was decided two years after Appellant's offenses, we also observe that Wellman reaffirms *Gall* and explains that our *Gall* decision had been misunderstood. Specifically, we stated:

We are continually beset with arguments founded upon "extreme emotional disturbance" despite the articulation of its meaning and impact in *Gall v. Commonwealth*, Ky., 607 S.W.2d 97, 108–109 (1980). It is our opinion that the principal cause of this problem is the failure of this court, in Gall, to specifically overrule those portions of *Ratliff* [*v. Commonwealth*, Ky., 567 S.W.2d 307 (1978)], *Bartrug* [*v. Commonwealth*, Ky., 568 S.W.2d 925 (1978)] and *Edmonds* [*v. Commonwealth*, Ky., 586 S.W.2d 24 (1978)], [citations omitted], which de-

19. *Gall v. Commonwealth*, 607 S.W.2d 97 (Ky. 1980), *Denial of Habeas Corpus Reversed by Gall v. Parker*, 231 F.3d 265 (6th Cir.2000).

20. 397 U.S. 358, 90 S.Ct. 1068, 25 L.Ed.2d 368 (1970).

21. 421 U.S. 684, 95 S.Ct. 1881, 44 L.Ed.2d 508 (1975).

22. 231 F.3d 265.

23. *Edmonds*, 586 S.W.2d at 27 (emphasis added).

24. 450 F.3d 224 (6th Cir.2006).

25. 694 S.W.2d at 697.

clare that the absence of extreme emotional distress is an essential element of the crime of murder and require the Commonwealth to prove such absence, even in those cases where there is no evidence whatever indicating emotional disturbance. To the extent that such cases declare absence of extreme emotional distress to be an element of the crime of murder, they are expressly overruled.

The presence or absence of extreme emotional distress is a matter of evidence, not an element of the crime. They are a matter of the circumstances of each homicide, and there is certainly no obligation to prove the absence of something which was never there.[26]

At the time of Appellant's offenses, the absence of EED was not an element of murder pursuant to *Gall.* Therefore, it was not ineffective assistance of counsel for trial counsel to refrain from requesting an EED instruction based not only on the evidence, but also on the law.

Appellant asserts that trial counsel was ineffective for failing to request adequate instructions on intoxication. However, Appellant raised this issue on direct appeal and this Court found no error in the instructions given concerning intoxication.[27] The same is true for Appellant's contention that trial counsel should have requested a wanton murder instruction. On direct appeal, this court discerned no error in the failure to instruct on wanton murder as there was no evidence to support it.[28]

Appellant contends that trial counsel failed to prepare him for his testimony during the penalty phase of trial. However, trial counsel testified that he and Appellant had discussed the details of the murders and that Appellant testified just as counsel expected. Furthermore, it was clear that some discussions regarding Appellant's testimony had taken place because trial counsel had instructed him to leave out the portion of the events concerning another murder which was not a part of the charges in the case and Appellant complied with this instruction. Accordingly, there is no merit to this assertion.

Appellant also alleges that he was entitled to expert assistance to establish his ineffectiveness claims. However, the trial court did not abuse its discretion in denying funds for reasons similar to those given above in our rejection of Appellant's ineffective assistance claim based on failure to engage additional experts. Appellant has presented no evidence that would warrant additional experts.

Appellant's next assertion is that he should have received an additional RCr 11.42 hearing based on the affidavits of Dr. Drogin and Dr. Nelson. For the reasons expressed above, these affidavits are of limited value and do not warrant further hearings. Appellant also asserts that the trial court erred in failing to include certain issues in the initial RCr 11.42 hearing. These additional issues are whether counsel failed to obtain an adequate independent psychological exam, whether counsel failed to request adequate instructions, whether trial counsel violated the Hobbs Act, whether funding should have been granted for additional investigation, and whether imposing the death penalty after Appellant has spent over twenty years in prison is cruel and unusual punishment.

However, most of these issues were argued at the RCr 11.42 hearing and have been addressed hereinabove. The trial

26.  *Wellman,* 694 S.W.2d at 697.

27.  *Halvorsen,* 730 S.W.2d 921.

28.  *Id.*

court correctly found that an additional hearing was unnecessary given that it had ruled on all issues based upon the record, the evidentiary hearing, and the relevancy of the issues raised. With regard to the alleged Hobbs Act violation, the trial court did allow Appellant to address the court at the RCr 11.42 hearing and gave Appellant the opportunity to inform the court of his allegations despite Appellant's having supplemented his RCr 11.42 motion with this particular claim on the morning of the hearing.

■ Finally, Appellant asserts that his death sentence is in contravention of the International Covenant on Civil and Political Rights (ICCPR), his execution after twenty years on death row is cruel and unusual punishment, and that trial counsel violated the Hobbs Act. We find no merit to any of these issues. Congress ratified the ICCPR in 1992 under specific reservations; namely, that the provisions of Articles 1 through 27 of the ICCPR are not self-executing.[29] In *Buell v. Mitchell*,[30] the Sixth Circuit held that non-self-executing agreements are not given effect as law. Furthermore, Appellant's argument that

his death penalty was arbitrarily imposed in violation of the ICCPR presupposes that his constitutional claims of ineffective assistance of counsel are meritorious, and we have concluded that they are not. Accordingly, we reject Appellant's argument. Concerning Appellant's Eighth Amendment claim, state and federal courts alike have rejected the contention that incarceration on death row as a result of the appellate process violates the Eighth Amendment prohibition against cruel and unusual punishment.[31]

■ Lastly, the trial court did not abuse its discretion in denying Appellant's Hobbs Act claim. Counsel with the Department of Public Advocacy withdrew from Appellant's case at some point and contracted with other counsel to continue his case, and later the original DPA counsel resumed. Appellant contends that DPA's initial withdrawal was a result of the actions of his trial counsel—a state senator— threatening to cut the Department of Public Advocacy's (DPA) funding unless the RCr 11.42 proceeding against him was dropped. He asserts that trial counsel's

---

29. 138 CONG. REC. S4781–01, *S4783–84 (daily ed. April 2, 1992) (statement of presiding officer of resolution of ratification).

30. 274 F.3d 337, 372 (6th Cir.2001).

31. *See e.g., White v. Johnson*, 79 F.3d 432 (5th Cir.1996) (holding that a seventeen-year period of incarceration on death row during habeas corpus review process did not violate Eighth Amendment ban against cruel and unusual punishment); *Free v. Peters*, 50 F.3d 1362 (7th Cir.1995) (holding that any inordinate delay in execution of defendant's death sentence was directly attributable to his own conduct, and did not constitute cruel and unusual punishment); *McKenzie v. Day*, 57 F.3d 1493 (9th Cir.1995) (holding that it would not constitute cruel and unusual punishment to execute prisoner after delay of 20 years between conviction and date of execution and resetting of execution date eight times, combined with allegedly unconstitu-

tional conditions of confinement); *Ex parte Bush*, 695 So.2d 138 (Ala.1997) (holding that capital defendant's incarceration for 16 years awaiting the execution of his death sentence did not constitute cruel and unusual punishment); *State v. Smith*, 280 Mont. 158, 931 P.2d 1272 (1996) (holding that defendant's having spent approximately 13 years on death row and having had four sentencing hearings did not establish that death sentence would violate his right to due process or his right to be free from cruel and unusual punishment particularly in light of the fact that defendant had benefited from appellate and federal review process of which he had availed himself and which had resulted in delay and multiple sentencing hearings); *Rose v. State*, 787 So.2d 786 (Fla.2001) (holding that prolonged stay on death row for more than twenty years was not cruel and unusual punishment);

actions violated the Hobbs Act which provides in pertinent part:

> Whoever in any way or degree obstructs, delays, or affects commerce or the movement of any article or commodity in commerce, by robbery or extortion or attempts or conspires to do so, or commits or threatens physical violence to any person or property in furtherance of a plan or purpose to do anything in violation of this section shall be fined under this title or imprisoned not more than twenty years, or both.[32]

According to the United States Supreme Court, the Hobbs Act "manifest[s] a purpose to use all the constitutional power Congress has to punish interference with interstate commerce by extortion, robbery or physical violence."[33] Even assuming that the Hobbs Act had any applicability to Appellant's allegations, Appellant has not shown any prejudice in this RCr 11.42 proceeding. As the trial court stated, "Movant was never without counsel and had means to move the Court for funds to prosecute his motion. The denial of such funds by the Court would not be based on whether his counsel was employed by the Department of Public Advocacy or contracted with the agency." Accordingly, there was no abuse of discretion in the trial court's denial of this claim.

For the foregoing reasons, we affirm the trial court's denial of post-conviction relief.

All sitting.

LAMBERT, C.J., and CUNNINGHAM, MINTON, NOBLE, SCHRODER, and SCOTT, JJ., concur.

---

**32.** 18 U.S.C.1951(a).

**33.** *Stirone v. U.S.,* 361 U.S. 212, 215 80 S.Ct. 270, 4 L.Ed.2d 252 (1960).