# TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN

### NO. 03-07-00687-CV

**Softech International, Inc. d/b/a 360 Training, Appellant**

**v.**

**Diversys Learning, Inc. d/b/a Serverlicense.com and TABCpermit.com; Lernen, Inc.; Scott Bailey and Torrey Eltiste, Appellees**

**FROM THE DISTRICT COURT OF TRAVIS COUNTY, 53RD JUDICIAL DISTRICT
NO. D-1-GN-07-000260, HONORABLE MARGARET A. COOPER, JUDGE PRESIDING**

### M E M O R A N D U M   O P I N I O N

Softech International, Inc. d/b/a 360 Training ("360 Training") appeals from an order imposing sanctions in the amount of $79,613.25 under chapter 10 of the civil practice and remedies code. *See* Tex. Civ. Prac. & Rem. Code Ann. §§ 10.001-006 (West 2002) (authorizing sanctions for frivolous pleadings and motions). Because we hold that the trial court did not abuse its discretion in imposing the sanctions, we affirm the judgment of the trial court.

### BACKGROUND

360 Training provides online courses for alcohol seller and server training and certification.[1] Appellees Scott Bailey and Torrey Eltiste are former employees of 360 Training.

---

[1] The Texas Alcoholic Beverage Commission certifies and monitors courses for persons who sell or serve alcoholic beverages in restaurants or retail stores. Such courses cover the laws concerning the sale or service of alcoholic beverages to minors, intoxicated customers, and non-members of a private club, as well as techniques to prevent such sales. While these courses are not mandated by state law, many employers require their employees who sell or serve alcohol to have the certification. *See* Texas Alcoholic Beverage Commission, Frequently Asked Questions: Seller/Server Training, http://www.tabc.state.tx.us/help/seller.htm (last visited March 10, 2009).

Bailey and Elstiste left the employ of 360 Training in the spring of 2005 and now run appellee companies Lernen, Inc. and Diversys Learning, Inc. d/b/a Serverlicense.com and TABCpermit.com, which are competitors of 360 Training.[2]

In January 2007, 360 Training sued Diversys, alleging, among other things, that Diversys stole 360 Training's programming and source code and used the code to launch their competitor websites. In an affidavit attached to the petition, 360 Training's President and Chief Executive Officer Ed Sattar averred that "360 Training has recently learned from existing clients that Eltiste and Bailey used the knowledge and code they acquired from 360 Training during their employ to form Diversys and TABCpermit.com and to compete with 360 Training on an ongoing basis since then." 360 Training sought, and was granted, a temporary restraining order which prevented Diversys from using any of 360 Training's source code. At the hearing on the TRO, the parties agreed to conduct expedited discovery before the hearing on the temporary injunction, which 360 Training said was set for March 5, 2007.[3]

During the expedited discovery period, Diversys sought to depose Sattar and Albert Lilly, 360 Training's corporate representative.[4] The depositions were initially scheduled for

---

[2] We will refer to the appellees collectively as "Diversys," except where it is necessary to distinguish among individual appellees.

[3] Documents filed by the parties and issued by the court reference a scheduled March 5 hearing on the temporary injunction; however, the hearing was never actually set on the court's docket. Diversys argues that 360 Training's failure to actually set the temporary injunction hearing is evidence that 360 Training was acting in bad faith and never intended to follow through on the temporary injunction hearing or the underlying suit.

[4] Lilly, 360 Training's Vice-President of Business Development, had also executed an affidavit in support of the TRO, which alleged wrongdoing by Diversys, including that Bailey created false accounts to channel money away from 360 Training and that "360 Training believes Scott Bailey and Torrey Eltiste stole programming and source code belonging to 360 Training to form SERVERlicense.com."

2

February 14, 2007, but were canceled by 360 Training at the last minute, due to the illness of its counsel. Two days later, 360 Training sought a protective order from the court to prevent the rescheduling of these same depositions, arguing that the issue of whether Diversys had misappropriated source code "can more easily be determined by an examination and comparison of the Parties' source code." 360 Training also requested the trial court to compel Diversys to produce its source code before ordering any depositions. The court denied 360 Training's request and ordered that Sattar and Lilly be made available for depositions.

The depositions of Sattar and Lilly focused solely on the allegation that Diversys stole 360 Training's source code. When asked what evidence 360 Training had to support the allegation, Lilly pointed solely to the website, "TABCpermit.com." Lilly acknowledged that a competitor could run a website with the same course content and a similar look and feel without using stolen trade secrets, but argued that the timing and circumstances surrounding the establishment of TABCpermit.com were suspicious "and led us to believe that [TABCpermit.com] was a site established as a competitive site using resources of 360 Training during the employment of the defendants." When Sattar was asked if he had "any evidence that any defendant took or is using or has used any 360 Training source code," Sattar replied, "No." However, Sattar also testified that Jim Knowles, a former business associate of 360 Training, had told him that Diversys misappropriated 360 Training's source code. When asked for more details about the conversation with Knowles, Sattar testified that all he remembered about the conversation was that Knowles "indicated" that Diversys was using stolen source code. Diversys later deposed Jim Knowles, who testified that he did not tell Sattar or anyone associated with 360 Training that Diversys was using

3

360 Training's source code. Jim Knowles also testified that 360 Training's Vice President, William Vear, discussed with him 360 Training's intentions to lower their prices in an attempt to drive TABCpermit.com out of business.

On March 1, four days before the temporary injunction hearing, 360 Training nonsuited its case. Diversys moved for sanctions against 360 Training, arguing that the allegation that Diversys stole source code did not have any evidentiary support, that the Sattar affidavit contained false testimony, and that the lawsuit was brought for an improper purpose—to drive Diversys out of business. After an evidentiary hearing, the trial court granted the motion and sanctioned 360 Training $77,000 under chapter 10 of the civil practice and remedies code.

After the trial court rendered its final judgment, 360 Training retained new counsel and moved for a new trial, arguing that the imposition of sanctions was in error because the pleadings were supported by circumstantial evidence and were filed for a proper purpose. In the alternative, 360 Training argued that the sanctions should have been imposed on 360 Training's former counsel instead of 360 Training. The trial court granted 360 Training's motion for a new trial. Diversys then filed an updated sanctions motion, which was heard by the court on August 2. After conducting an evidentiary hearing, the trial court imposed sanctions against 360 Training in the amount of $79,631.25 in reasonable attorney's fees plus conditional appellate attorney's fees.

## STANDARD OF REVIEW

We review a trial court's award of sanctions under an abuse of discretion standard. *See Low v. Henry*, 221 S.W.3d 609, 614 (Tex. 2007). A trial court abuses its discretion when it acts in an arbitrary or unreasonable manner without reference to any guiding rules or principles.

4

*Cire v. Cummings*, 134 S.W.3d 835, 838-39 (Tex. 2004). We examine the entire record, review the conflicting evidence in the light most favorable to the court's ruling, and draw all reasonable inferences in favor of the court's judgment. *Herring v. Welborn*, 27 S.W.3d 132, 143 (Tex. App.—San Antonio 2000, pet. denied). As fact finder, the trial court is entitled to evaluate the credibility of the testimony and determine what weight to give it. *Alpert v. Crain, Caton, & James, P.C.*, 178 S.W.3d 398, 412 (Tex. App.—Houston [1st Dist.] 2005, pet. denied). We reverse a decision to impose sanctions only if "the order is based on an erroneous view of the law or a clearly erroneous assessment of the evidence." *Loeffler v. Lytle Indep. Sch. Dist.*, 211 S.W.3d 331, 347-48 (Tex. App.—San Antonio 2006, pet. denied).

## DISCUSSION

Under the civil practice and remedies code, the signer of a pleading or motion certifies that "*each* claim, *each* allegation, and *each* denial is based on the signatory's best knowledge, information, and belief, formed after reasonable inquiry." *Low*, 221 S.W.3d at 615 (emphases in original); *see also* Tex. Civ. Prac. & Rem. Code Ann. § 10.001.[5] A trial court may

---

[5] Section 10.001 of the civil practice and remedies code provides:

The signing of a pleading or motion as required by the Texas Rules of Civil Procedure constitutes a certificate by the signatory that to the signatory's best knowledge, information, and belief, formed after reasonable inquiry:

(1) the pleading or motion is not being presented for any improper purpose, including to harass or to cause unnecessary delay or needless increase in the cost of litigation;

(2) each claim, defense, or other legal contention in the pleading or motion is warranted by existing law or by a nonfrivolous argument for the extension, modification, or reversal of existing law or the establishment of new law;

sanction an attorney or party for filing pleadings that have "little or no basis for the claims, no grounds for legal arguments, [contain] misrepresentation of law or facts, or [seek] legal action . . . in bad faith." *Lake Travis Indep. Sch. Dist. v. Lovelace*, 243 S.W.3d 244, 256-57 (Tex. App.—Austin 2007, no pet.); *see also* Tex. Civ. Prac. & Rem. Code Ann. § 10.004 (authorizing sanctions). There must be a direct nexus between the improper conduct and the sanctions imposed. *Low*, 221 S.W.3d at 614. The sanctions must be imposed on the true offender and tailored to remedy any prejudice caused by the offense. *Thottumkal v. McDougal*, 251 S.W.3d 715, 717 (Tex. App.—Houston [14th Dist.] 2008, pet. denied) (citing *Cire*, 134 S.W.3d at 838). In addition, we must ask whether less severe sanctions would have been sufficient. *Id.*

360 Training challenges each step in the trial court's imposition of sanctions, arguing first that there was no evidence to support the trial court's findings that the pleadings did not have evidentiary support and were filed for an improper purpose, second that there was an insufficient nexus between the improper conduct cited by the court and the sanctions imposed, and finally that the sanctions were excessive. We will address each of these challenges in turn.

---

(3) each allegation or other factual contention in the pleading or motion has evidentiary support or, for a specifically identified allegation or factual contention, is likely to have evidentiary support after reasonable opportunity for further investigation or discovery; and

(4) each denial in the pleading or motion of a factual contention is warranted on the evidence or, for a specifically identified denial, is reasonably based on a lack of information or belief.

Tex. Civ. Prac. & Rem. Code Ann. § 10.001 (West 2002).

6

**Did the Pleadings Contain an Allegation without Evidentiary Support?**

The trial court imposed sanctions "because 360 Training's pleadings that Defendants misappropriated 360 Training's source or programming code and its request for and pursuit of a temporary injunction were without evidentiary support." In support of its conclusion that 360 Training filed pleadings without evidentiary support, the trial court found that 360 Training filed "a false petition and a false affidavit" and that "360 Training admitted that its allegation of theft of source code had no evidentiary support." These findings are amply supported by the record.[6] Based on the record before it, the trial court could have reasonably found two separate grounds for imposing sanctions—that 360 Training's pleadings contained false and misleading statements of the facts, and that its circumstantial evidence amounted to no more than mere suspicion, thus leaving little or no basis for the claim that Diversys stole its source code. *See Lovelace*, 243 S.W.3d at 256-57 (grounds for imposing sanctions under chapter 10 include "misrepresentation of law or facts" and "little or no basis for the claims").

---

[6] Legal sufficiency of the evidence to support the trial court's finding is a factor in deciding whether the trial court abused its discretion. *Armstrong v. Collin Co. Bail Bond Bd.*, 233 S.W.3d 57, 62 (Tex. App.—Dallas 2007, no pet.) (citing *Beaumont Bank, N.A. v. Buller*, 806 S.W.2d 223, 226 (Tex. 1991)). A legal sufficiency challenge may only be sustained when:

> (1) the record discloses a complete absence of evidence of a vital fact, (2) the court is barred by the rules of law or evidence from giving weight to the only evidence offered to prove a vital fact, (3) the evidence offered to prove a vital fact is no more than a mere scintilla, or (4) the evidence establishes conclusively the opposite of the vital fact.

*Id.* (citing *Uniroyal Goodrich Tire Co. v. Martinez*, 977 S.W.2d 328, 334 (Tex. 1998)).

7

*False or Misleading Statements*

Sanctions under chapter 10 may be based on a finding that the pleadings contained a misrepresentation of the facts. *See Lovelace*, 243 S.W.3d at 256-57. The trial court had sufficient evidence before it to support its finding that "360 Training filed a false petition and a false affidavit."

The petition was supported by Sattar's affidavit, in which he claimed that "360 Training has recently learned from existing clients that Eltiste and Bailey used the knowledge and code they acquired from 360 Training during their employ to form Diversys and TABCpermit.com." When asked in his deposition to identify these clients, Sattar only named one—Jim Knowles. Sattar was deliberately vague when describing the conversation, and Knowles himself testified that he had never had such a conversation with Sattar or anyone at 360 Training. Thus, the trial court could have reasonably discredited Sattar's testimony regarding Knowles. Further, even if the trial court credited Sattar's testimony about Knowles, it could have reasonably determined that the affidavit was false, because in it Sattar averred that multiple clients informed 360 Training of the stolen source code, but Sattar was only able to name one such client in his deposition.

360 Training argues that the false affidavit is not sufficient to justify sanctions because chapter 10 of the civil practice and remedies code authorizes sanctions for filing a petition, not an affidavit. *See* Tex. Civ. Prac. & Rem. Code Ann. §§ 10.001 (requirements of "pleading or motion"), 10.004 (authorizing sanctions when a person files a "pleading or motion" in violation of section 10.001). While 360 Training is correct that the filing of a false affidavit alone is not sufficient to justify the imposition of sanctions, *see R.M. Dudley Constr. Co. v. Dawson*, 258 S.W.3d

8

694, 709 (Tex. App.—Waco 2008, pet. filed) (abuse of discretion to impose sanctions based solely on false affidavit because "Chapter 10, by its own terms, is limited to frivolous pleadings and motions"), here the trial court concluded that "360 Training filed a false affidavit *and a false sworn petition*." (Emphasis added.) Because the trial court concluded that the petition itself was false, *R.M. Dudley Construction* does not apply. *Compare id.* (findings and conclusions reference affidavits and liens for improper purpose, but "do not expressly find or conclude that Dudley Construction's counterclaim was intended to harass the Appellees") *with Skepnek v. Mynatt*, 8 S.W.3d 377, 381 (Tex. App.—El Paso 1999, pet. denied) (holding that because "each legal conclusion drawn by the trial court included a reference to the special appearance rather than the affidavit alone, there can be no doubt that 'the conduct' to which the court referred was the filing of the special appearance motion and not the mere filing of a false affidavit").

The trial court was not unreasonable in finding that 360 Training's petition was false, as well. The only statement in the affidavits filed with the petition that supported the allegation of stolen source code was the false statement in Sattar's affidavit. Sattar, who had signed the original petition, was asked in his deposition, "Do you have any evidence that any defendant took or is using or has used any 360 Training source code?" He responded, "No," in direct contravention of the affirmation he made when he signed the pleadings. Because sanctions under chapter 10 of the civil practice and remedies code can be based on a finding that the pleadings contained a misrepresentation of the facts, the trial court did not abuse its discretion in imposing sanctions on the grounds that 360 Training filed a false petition. *See Lovelace*, 243 S.W.3d at 256-57.

9

*Little or No Basis for Allegation*

Sanctions under chapter 10 are also appropriate where the pleadings have little or no basis for its claims. *Id.* Here, the trial court found that "360 Training admitted that its allegation of theft of source code had no evidentiary support." 360 Training contends that the trial court mischaracterizes the deposition testimony of 360 Training's officers. In addition to Sattar's testimony about his conversation with Knowles—which was deemed false by the trial court—360 Training cites to Lilly's testimony about the circumstances surrounding the creation of the website "TABCpermit.com" and about Bailey and Eltiste's departures from 360 Training. 360 Training argues that this testimony constitutes circumstantial evidence that Diversys had stolen 360 Training's source code.

360 Training correctly notes that it is not required to have direct evidence to support its allegation, because "circumstantial evidence may be used to establish any material fact." *Ford Motor Co. v. Ridgway*, 135 S.W.3d 598, 601-02 (Tex. 2004). However, "we are not empowered to convert mere suspicion or surmise into some evidence." *Browning-Ferris, Inc. v. Reyna*, 865 S.W.2d 925, 928 (Tex. 1993). When circumstances surrounding an action are consistent with more than one inference and nothing shows that one inference is more probable than the other, the circumstances constitute mere suspicion, and not legally cognizable evidence. *See Continental Coffee Prod. Co. v. Cazarez*, 937 S.W.2d 444, 450 (Tex. 1996); *Litton Indus. Prod., Inc. v. Gammage*, 668 S.W.2d 319, 324 (Tex. 1984).

360 Training contends that the circumstances surrounding the creation of the "TABCpermit.com" website operated by Diversys constitutes circumstantial evidence that Diversys had stolen 360 Training's source code. In his deposition testimony, Lilly pointed to the website as

10

360 Training's sole evidence to support the stolen source code allegation. At the second sanctions hearing, Lilly expounded on the circumstances and the inferences 360 Training drew from them. Lilly testified that the "TABCpermit.com" domain was originally owned by Mike Green, who was an acquaintance of defendant Bailey. Green operated "TABCpermit.com" as a "reseller" for 360 Training.[7] Lilly testified that the "TABCpermit.com" website was originally hosted on 360 Training's servers and that Green cashed the checks from 360 Training, rather than depositing them into a bank account.[8] These two facts, combined with Lilly's assumption that Green was not knowledgeable enough to develop the source code behind "TABCpermit.com," led Lilly to believe that "TABCpermit.com" was not a legitimate reseller website, but was instead a competitor website created by Bailey and Eltiste, while still employed at 360 Training, using 360 Training's source code and other resources.

While the circumstances surrounding the "TABCpermit.com" might lead 360 Training to suspect that the website was improperly created by Bailey and Eltiste, the circumstances are also consistent with the website being a true reseller operated by Green, who later sold the domain name to Diversys. Lilly acknowledged that other legitimate reseller websites were hosted

---

[7] 360 Training's resellers operate and advertise websites which purport to provide alcohol server training, but which instead direct the consumer to one of 360 Training's courses. 360 Training and the reseller then share the revenues from the course registrations.

[8] In its petition and in its briefing to this Court, 360 Training states that Bailey made more than $7,000 in transfers to the "anonymous owner" of "TABCpermit.com." However, in his testimony before the trial court, Lilly noted that when he asked Bailey about the transfers, Bailey told him that Mike Green was the owner of the domain and was operating it as a reseller. Lilly also acknowledged that 360 Training received a portion of the profits from "TABCpermit.com" course registrations, consistent with the reseller relationship.

on 360 Training's servers, so this fact does not create an inference of wrongdoing. Similarly, Green could have chosen to cash the checks for any number of reasons; 360 Training's suggestion that he did so for nefarious purposes is nothing more than conjecture. As a result, the trial court reasonably concluded that the events surrounding "TABCpermit.com" do not constitute circumstantial evidence sufficient to support the allegation that Diversys misappropriated source code.

360 Training also points to the events surrounding Bailey's and Eltiste's resignations as circumstantial evidence of their wrongdoing. Specifically, 360 Training alleges that, before leaving, Bailey and Eltiste erased the hard drives of their 360 Training computers and that they both lied about their future employment plans. Eltiste testified that he deleted the files on the computer with his user name because 360 Training was under investigation for software piracy and "had a habit of blaming former employees for problems." Bailey's and Eltiste's decisions to not inform their employer that they were leaving to create a competitor business are just as consistent with a decision to compete fairly as they are with a decision to compete unfairly using stolen source code.

360 Training confuses mere suspicion with circumstantial evidence. The circumstances surrounding the creation of "TABCpermit.com" and Bailey's and Eltiste's departures from 360 Training could be sufficient to arouse suspicion, but do not rise to the level of circumstantial evidence. The civil practice and remedies code requires that potential plaintiffs conduct a "reasonable inquiry" to determine if there is any evidence to support their suspicions before filing suit. *See* Tex. Civ. Prac. & Rem. Code Ann. § 10.001 (signature on pleading "constitutes a certificate by the signatory that to the signatory's best knowledge, information, and

12

belief, formed after reasonable inquiry"); *Low*, 221 S.W.3d at 617 (by signing pleading, signor certifies that he or she conducted a reasonable inquiry into all allegations). 360 Training skipped this crucial step.

"In order to determine if a pleading, motion, or paper was groundless the court objectively inquir[es] as to whether the party and counsel made a reasonable inquiry into the legal and factual basis of the claim at the time the suit was filed." *Loeffler*, 211 S.W.3d at 348. A reasonable inquiry is that amount of examination that is reasonable under the circumstances of the case. *Cf. Robson v. Gilbreath*, 267 S.W.3d 401, 406 (Tex. App.—Austin 2008, pet. filed) (defining reasonable inquiry for purposes of Rule 13 sanctions) (citing *Monroe v. Grider*, 884 S.W.2d 811, 817 (Tex. App.—Dallas 1994, writ denied)). The trial court must examine the facts and circumstances as they existed when the pleadings were filed, and determine what information the plaintiffs did *and could* discover before filing suit. *See Armstrong v. Collin Co. Bail Bond Bd.*, 233 S.W.3d 57, 63 (Tex. App.—Dallas 2007, no pet.).

The trial court could have reasonably concluded that 360 Training failed to conduct a reasonable inquiry as required by the civil practice and remedies code. When asked if 360 Training had examined its computer logs to determine if anyone had downloaded or printed the source code, Lilly testified that this had not been done, though he acknowledged such an investigation was feasible and "should have" been done. Further, Lilly admitted that "not a significant amount of effort [was] put in" to determining if 360 Training's servers contained any evidence of wrongdoing. At a minimum, 360 Training should have conducted a pre-suit review of the evidence they had in their own possession. *See Low*, 221 S.W.3d at 616.

13

In the alternative, 360 Training argues that the circumstances surrounding the creation of the website and the defendant's departures led it to believe that the allegation of stolen source code was "likely to have evidentiary support after a reasonable opportunity for further investigation and discovery." *See* Tex. Civ. Prac. & Rem. Code Ann. § 10.001(3). 360 Training argues that this belief is sufficient to satisfy the requirements of the civil practice and remedies code. By signing a petition, a plaintiff certifies that "each allegation or other factual contention in the pleading or motion has evidentiary support or, *for a specifically identified allegation or factual contention*, is likely to have evidentiary support after a reasonable opportunity for further investigation." *Id.* (emphasis added). 360 Training did not so identify the allegation at issue. Because there is nothing in 360 Training's petition identifying the allegation of stolen source code as one which would require further investigation in order to develop evidentiary support, by the plain language of the statute, 360 Training certified that it already had evidentiary support.

Because the trial court could have reasonably concluded that 360 Training filed a false petition and that its purported "circumstantial evidence" did not amount to more than mere suspicion, we hold that the trial court did not abuse its discretion in finding that 360 Training did not have evidentiary support for the allegation that Diversys misappropriated source code. Under chapter 10 of the civil practice and remedies code, this finding by the trial court is sufficient to support the imposition of sanctions, whether or not the suit was filed for an improper purpose. *See Low*, 221 S.W.3d at 617 (sanctions warranted for groundless pleading without proving improper purpose). Therefore, we need not reach the question of whether the suit was filed for an improper purpose. *Id.*; *see also* Tex. R. App. P. 47.1.

**Was there a Sufficient Nexus between the Improper Conduct and the Sanctions Imposed?**

For sanctions to be upheld, there must be a direct nexus between the improper conduct and the sanctions imposed, and the sanctions must be imposed on the true offender. *Low*, 221 S.W.3d at 614; *Thottumkal*, 251 S.W.3d at 717 (Tex. App.—Houston [14th Dist.] 2008, pet. denied). 360 Training argues that most of the offensive conduct cited by the court was outside of their control. Specifically, 360 Training argues that its lawyers made the decision to resist discovery and failed to set the temporary injunction hearing on the court's docket—actions cited by the trial court in its determination that 360 Training filed the suit for an improper purpose. 360 Training contends that "a party should not be sanctioned for its attorney's conduct 'unless the party is implicated apart from having entrusted its legal representation to counsel.'" *Loeffler*, 211 S.W.3d at 349 (quoting *Glass v. Glass*, 826 S.W.2d 683, 687 (Tex. App.—Texarkana 1992, writ denied)).

We have upheld the sanctions award on the independent ground that the allegation of stolen source code is without evidentiary support, based on conduct within the control of 360 Training—failure to conduct a reasonable inquiry and the signing of a false petition and affidavit. The trial court, after hearing from and observing 360 Training's representatives as well as its former counsel, concluded that 360 Training's lawyers "were entitled to rely on the sworn testimony of their clients, and the Court has not found that the lawyers engaged in conduct to induce false or unsupported claims." Under the circumstances, we cannot say that the trial court's conclusion that 360 Training was the responsible party was arbitrary or without reference to guiding rules or principles, *see Cire*, 134 S.W.3d at 838-39, nor can we say that it was based on "a clearly

15

erroneous assessment of the evidence," *see Loeffler*, 211 S.W.3d at 347-48. Therefore, we hold that the trial court did not abuse its discretion in imposing sanctions on 360 Training.

**Were the Sanctions Excessive?**

In reviewing a sanctions order, we must determine whether less severe sanctions would have been sufficient. *Thottumkal*, 251 S.W.3d at 717. 360 Training argues that the trial court erred in setting the amount of sanctions because it failed to expressly consider lesser, or even non-monetary, sanctions. Like the decision of whether to impose sanctions, the amount of sanctions is within the sound discretion of the trial court, and will only be overturned if the trial court acted without reference to any guiding rules or principles. *Low*, 221 S.W.3d at 619-20.

In awarding $79,631.25 in reasonable attorney's fees, the trial court noted that Diversys had actually incurred fees "far in excess of" that amount for necessary services. The civil practice and remedies code specifically authorizes sanctions to include "an order to pay to the other party the amount of the reasonable expenses incurred by the other party because of the filing of the pleading or motion, including reasonable attorney's fees." Tex. Civ. Prac. & Rem. Code Ann. § 10.004. When determining the amount of a sanction, trial courts are directed to "begin with an acknowledgment of the costs and fees incurred because of the sanctionable conduct. This provides a monetary guidepost of the impact of the conduct on the party seeking sanctions and the burdens on the court system." *Low*, 221 S.W.3d at 621; *see also Thottumkal*, 251 S.W.3d at 718 (holding that amount of sanctions was proper because movant produced evidence that it had incurred that amount in expenses).

Because the trial court's sanction amount was based on the costs and fees incurred by Diversys as a result of 360 Training's sanctionable conduct, we hold that the trial court did not abuse its discretion in imposing $79,631.25 in sanctions. The trial court also did not abuse its discretion in requiring 360 Training to reimburse Diversys for the expense of having to defend its sanctions order in the event of an unsuccessful appeal. *See Law Offices of Windle Turley, P.C. v. French*, 164 S.W.3d 487, 492-93 (Tex. App.—Dallas 2005, no pet.) (upholding award of appellate attorney's fees in event of unsuccessful appeal).

## CONCLUSION

Because we hold that the trial court did not abuse its discretion in imposing sanctions on 360 Training in the amount of $79,613.25 plus reasonable appellate attorney's fees, we affirm the judgment of the trial court.

_____

Diane M. Henson, Justice

Before Justices Patterson, Waldrop and Henson

Affirmed

Filed: March 13, 2009

17