# TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN

## NO. 03-06-00742-CV

**Appellant, Lake Travis Independent School District// Cross-Appellants,
David Lovelace and Melissa Lovelace**

**v.**

**Appellees, David Lovelace and Melissa Lovelace// Cross-Appellee,
Lake Travis Independent School District**

## FROM THE DISTRICT COURT OF TRAVIS COUNTY, 126TH JUDICIAL DISTRICT NO. D-1-GN-06-003726, HONORABLE SUZANNE COVINGTON, JUDGE PRESIDING

## O P I N I O N

Lake Travis Independent School District ("District") appeals an order dismissing for lack of jurisdiction its suit against David and Melissa Lovelace alleging common-law claims for public nuisance and abuse of governmental process. The District sought (1) temporary and permanent injunctions against the Lovelaces to prevent them from submitting requests for public information under the Texas Public Information Act ("PIA")[1] or, in the alternative, a court-ordered procedure applicable to all requests submitted by the Lovelaces modifying the form that their requests would take under the PIA; (2) declarations that the Lovelaces had abused and misused the PIA, that all future requests by the Lovelaces for information pursuant to the PIA shall be governed

---

[1] Tex. Gov't Code Ann. §§ 552.001-.353 (West 2004).

by a modified, court-ordered process, and that the District would not be in violation of the PIA by complying with the modified process; and (3) actual monetary damages, attorney's fees, and costs. The trial court ruled that the District's suit was barred by section 552.324 of the PIA, and the District appeals. *See* Tex. Gov't Code Ann. § 552.324 (West 2004). The Lovelaces bring a cross-appeal from the trial court's order denying them attorney's fees. For the reasons that follow, we affirm.

## BACKGROUND

This case began when the District filed suit against the Lovelaces on September 29, 2006, alleging that the Lovelaces had made repeated requests for information under the PIA "in an effort to harass, beseige and attack the District." Specifically, the District alleged that as of October 24, 2006, the date of its first amended petition, the Lovelaces had made approximately 2,274 requests for information, requiring District representatives to copy over 120,000 pages and seek 551 open records determinations from the office of the Attorney General. The District argued that the Lovelaces' misuse of the PIA amounts to a public nuisance, interfering with the public right of the taxpayers of the District to an unencumbered public education for their children, and constitutes an abuse of the governmental process of the District and the State of Texas.

In characterizing the Lovelaces' behavior as a public nuisance, the District emphasized the disruptive and harassing methods the Lovelaces have employed in requesting information, and not the specific information requested, as the source of its complaint. It noted that on many occasions the Lovelaces have made dozens, even hundreds of requests at a time, placing a crippling burden on its office and personnel resources and redirecting staff time and attention away from the District's core educational role. In addition to their sheer volume, the District claims that

2

many of the Lovelaces' requests have been duplicative or have sought information that the District had already produced to the Lovelaces or that the Lovelaces had previously been informed did not exist. On one occasion, the Lovelaces withdrew a group of 162 separate requests for information, but not until after the District had already spent a great deal of time and effort responding to them. The District also cited the Lovelaces' refusal to comply with its attempts to enact more efficient procedures for dealing with the Lovelaces' bulk requests and recounted the Lovelaces' lack of cooperation with the District's public information officer whenever the District sought clarification regarding their requests. In addition, the District alleged that the Lovelaces have misused the District's internal complaint procedure and filed a number of unfounded complaints against District employees under the District's internal complaint system, as well as with the State Board for Educator Certification ("SBEC").[2] The District estimated that responding to all of the Lovelaces' requests and complaints submitted between August 2005 and September 2006 amounted to $700,000 in direct and indirect costs, funds that otherwise would have gone toward educating its students.

The Lovelaces answered and filed a plea to the jurisdiction and special exceptions, claiming that the District failed to state a cause of action within the jurisdiction of the court and that section 552.324 of the PIA prevented the District from filing this lawsuit. They also sought attorney's fees under rule 13 of the rules of civil procedure and sections 9.012 or 10.004 of the civil practice and remedies code, arguing that the District's suit was groundless, frivolous, brought in bad faith or for the purpose of harassment, and brought for the improper purpose of obtaining an excuse to refuse to comply with the PIA.

_____

[2] The SBEC is the agency responsible for the licensing and discipline of certified educators in Texas.

In its response to the Lovelaces' plea to the jurisdiction, the District reasserted its right to file a common-law public nuisance claim and argued that the PIA did not abrogate its right to bring common-law causes of action. The court granted the Lovelaces' plea to the jurisdiction, determining that section 552.324 of the PIA deprived the court of subject-matter jurisdiction to entertain the District's suit and that the District would not be able to replead to bring its suit within the jurisdiction of the court. The court also denied the Lovelaces' request for attorney's fees. Both parties appealed.

On appeal, the District argues (1) the PIA does not prohibit its suit for common-law causes of action by the express terms of the statute; (2) the PIA did not abrogate the District's common-law rights; and (3) the trial court erred by not allowing the District the opportunity to amend its pleadings. In a single issue on cross-appeal, the Lovelaces argue that the trial court erred by denying their request for attorney's fees under rule 13 of the rules of civil procedure or sections 9.012 or 10.004 of the civil practice and remedies code.[3]

## STANDARDS OF REVIEW

### *Plea to the jurisdiction*

The existence of subject-matter jurisdiction is a question of law; thus, we review de novo the trial court's ruling on a plea to the jurisdiction. *City of New Braunfels v. Allen*, 132 S.W.3d 157, 161 (Tex. App.—Austin 2004, no pet.). When a plea to the jurisdiction challenges

---

[3] Although the Lovelaces complain of the court's failure to award attorney's fees, they essentially contest the trial court's refusal to find that the District's suit was groundless, frivolous, and brought in bad faith or for an improper purpose. Therefore, we refer to the Lovelaces' issue on cross-appeal as the trial court's failure to impose sanctions on the District.

the pleadings, we determine if the pleader has alleged facts that affirmatively demonstrate the court's jurisdiction to hear the cause. *Texas Dep't of Parks & Wildlife v. Miranda*, 133 S.W.3d 217, 226 (Tex. 2004). We construe the pleadings liberally in favor of the plaintiffs and look to the pleader's intent. *Id.* If necessary, we may review the entire record to determine if the trial court had jurisdiction. *Bland Indep. Sch. Dist. v. Blue*, 34 S.W.3d 547, 554-55 (Tex. 2000). If the District's petition fails to allege jurisdictional facts, then its claims are subject to dismissal if it is impossible to amend its pleadings to confer jurisdiction. *See Bonham v. Texas Dep't of Criminal Justice*, 101 S.W.3d 153, 156 (Tex. App.—Austin 2003, no pet.).

### *Sanctions*

We review a trial court's award or denial of sanctions on appeal for an abuse of discretion. *Low v. Henry*, 221 S.W.3d 609, 614 (Tex. 2007). In matters committed to a district court's discretion, the test is whether the ruling was unreasonable or arbitrary or whether the court acted without reference to any guiding rules or principles. *Herrera v. Seton Nw. Hosp.*, 212 S.W.3d 452, 462 (Tex. App.—Austin 2006, no pet.). In deciding whether the denial of sanctions constitutes an abuse of discretion, we examine the entire record, including the findings of fact and conclusions of law, reviewing the conflicting evidence in the light most favorable to the trial court's ruling and drawing all reasonable inferences in favor of the court's judgment. *In re C.Z.B.*, 151 S.W.3d 627, 636 (Tex. App.—San Antonio 2004, no pet.).

## DISCUSSION

In deciding whether the District may pursue common law causes of action against the Lovelaces to prevent them from abusing the PIA, we are mindful of the important interests involved

5

on both sides of this controversy. As the Texas Supreme Court has often pronounced, "there can be no dispute that education of our children is an essential Texas value." *Edgewood Indep. Sch. Dist. v. Meno*, 917 S.W.2d 717, 726 (Tex. 1995). "We acknowledge that education is perhaps the most important function of state and local governments." *Carrollton-Farmers Branch Indep. Sch. Dist. v. Edgewood Indep. Sch. Dist.*, 826 S.W.2d 489, 494 (Tex. 1992). In order to fulfill the constitutional obligation to provide a general diffusion of knowledge, districts must be able to "provide all Texas children access to a quality education that enables them to achieve their potential and fully participate now and in the future in the social, economic, and educational opportunities of our state and nation." *Neeley v. West Orange-Cove Consol. Indep. Sch. Dist.*, 176 S.W.3d 746, 787 (Tex. 2005) (citations omitted). The steady stream of public school finance litigation in Texas is a testament to the resource crisis that our schools continue to face. *See, e.g.*, *id.* at 754; *Meno*, 917 S.W.2d at 726. We recognize that school districts, given their already limited funds, have a legitimate interest in determining how best to devote tax dollars towards educating our schoolchildren.

At the same time, however, we have a clear legislative mandate on the subject of open government and must be guided by the policy behind the PIA, which states:

> Under the fundamental philosophy of the American constitutional form of representative government that adheres to the principle that government is the servant and not the master of the people, it is the policy of this state that each person is entitled, unless otherwise expressly provided by law, at all times to complete information about the affairs of government and the official acts of public officials and employees.

Tex. Gov't Code Ann. § 552.001(a) (West 2004). As this court has explained, the "State of Texas

has chosen to pursue a policy of open government to serve the interests of the public," which means that "any information collected, assembled, or maintained by a governmental body is presumed open to public inspection." *Abbott v. City of Corpus Christi*, 109 S.W.3d 113, 121 (Tex. App.—Austin 2003, no pet.). We must be conscientious of any adverse consequences that our decision might have with respect to impairing the public's right to information or having a chilling effect on legitimate requests for disclosure.

Where these two fundamental concerns now seem to be at odds, we look to the statutory guidance provided by the legislature, which weighed the various competing interests at stake when it drafted the PIA. Like the trial court, we find that the legislature intended to prohibit governmental bodies from filing suit against requestors of public information and therefore affirm the trial court's ruling that it lacked subject-matter jurisdiction to hear the suit. In so doing, we acknowledge that the legislature has implemented procedural safeguards to prevent abuse of the PIA, and rather than rewrite the statute, we defer to the legislature to respond to the concerns of governmental bodies who would seek further recourse against its vexatious misuse.[4] Thus, even construing the pleadings in favor of the District, we are constrained to find that the PIA's prohibition against governmental bodies suing requestors of public information in section 522.324 bars the District from bringing this suit.

---

[4] From the time the PIA became effective, the legislature has allowed governmental bodies to charge reasonable fees when disclosing information "in an effort to ensure that the governmental body was not overly burdened." *See* Tex. H.B. 1718, 74th Leg., R.S. (1995) (concerning the revision of open records law). *See also* Tex. Gov't Code Ann. §§ 552.230 (West Supp. 2006) (providing that a governmental body may promulgate reasonable rules of procedure under which public information may be inspected), .232 (providing procedures for responding to repetitious or redundant requests), .263 (providing that an officer for public information may require a deposit or bond for payment of anticipated costs for the preparation of a copy of public information).

*Section 522.324*

   With regard to suits by a governmental body, the PIA states:

> The only suit a governmental body or officer for public information may file seeking to withhold information from a requestor is a suit that is filed in accordance with Sections 552.325 and 552.353 and that challenges a decision by the attorney general issued under Subchapter G.

Tex. Gov't Code Ann. § 552.324(a).  Section 552.325 expressly states, "A governmental body, officer for public information, or other person or entity that files a suit seeking to withhold information from a requestor may not file suit against the person requesting the information." *Id.* § 552.325(a).[5]  Instead, a suit seeking to withhold information may only be brought against the Attorney General.  *See id.* § 552.324(a).  To initiate a proper suit under the PIA, a governmental body must first obtain an attorney general opinion as to whether disclosure is required before it may challenge his determination that the information is subject to disclosure.  *See id.* §§ 552.301-.308.

   In its first point of error, the District argues that section 552.324 does not apply by its own terms because the District has not filed a suit "seeking to withhold information from a requestor."  On the contrary, it contends that this is a suit seeking to prevent the misuse of the PIA over time for an improper purpose, where such misuse amounts to a public nuisance and an abuse of governmental process.  The District reads into section 552.324 two elements that must be met in order for the suit to be barred under that section:  (1) the lawsuit must seek to withhold information from a requestor, and (2) the lawsuit must challenge a decision by the Attorney General

---

  [5]  Section 552.353 sets forth the consequences for a public information officer's failure to provide access to public information and is not relevant to this discussion.  *See* Tex. Gov't Code Ann. § 553.353 (West Supp. 2006).

issued under subchapter G. Because the District argues that its suit neither seeks to withhold information, nor challenges a decision by the attorney general, section 552.324 does not apply and cannot defeat the court's jurisdiction over its suit. It also argues that it has not sought to withhold any "specific" information from the Lovelaces; rather, it has only tried to limit or modify the manner in which the Lovelaces may make requests.

We disagree with the District's interpretation of section 552.324 and its characterization of the lawsuit it filed against the Lovelaces. Correctly read, the statute requires that whenever a governmental body files a suit seeking to withhold information, it may not sue the requestor and must instead file suit against the Attorney General. *Id.* §§ 552.324-.325. In other words, the District was prohibited from filing suit against the Lovelaces by the express language of section 552.324, which incorporates the prohibition set out in section 552.325 ("[a] governmental body . . . may not file suit against the person requesting the information"), and the only suit it could have brought in an attempt to withhold information was a suit against the Attorney General. *See id.*

In this case, the District filed suit against the Lovelaces and asked for injunctive relief preventing further requests for public information or, in the alternative, a modification of the process by which the Lovelaces are allowed to request information. Regardless of the form of the relief requested, the District's suit is "a suit seeking to withhold information" that was filed "against the person requesting the information." Therefore, it falls within the scope of section 552.324 and must adhere to the process for challenge that the statute sets forth. Moreover, there is no requirement that the governmental body seek to withhold *specific* information; rather, we read section 552.324 to prohibit any lawsuit against a requestor that *in fact* seeks to withhold any public information, which is consistent with both the plain language of the statute and the PIA's broad policy favoring

9

disclosure. *See id.* § 552.001(b). Because either the injunctive or the alternative relief sought would have the effect of withholding information from the Lovelaces, we sustain the trial court's ruling that the suit is prohibited under section 552.324 of the PIA.[6]

The District argues that the 2,274 requests made by the Lovelaces do not represent a "typical" PIA case and that it is appropriate for the District to act outside the statutory framework in dealing with their requests. Rather than sue the Lovelaces, however, which is specifically barred by the PIA, the District should have availed itself of provisions contained in the statute that were designed to mitigate the effects of burdensome requests. *See, e.g.*, Tex. Gov't Code Ann. §§ 552.230 (West Supp. 2006) (providing that a governmental body may promulgate reasonable rules of procedure under which public information may be inspected and copied efficiently, safely, and without delay), .232 (providing procedures for responding to repetitious or redundant requests), .263 (providing that an officer for public information may require a deposit or bond for payment of anticipated costs for the preparation of a copy of public information).

The District agrees that these sorts of provisions generally strike the proper balance between public access and governmental inconvenience, but it suggests that they are only effective in "typical" cases designed to address "normal" public information requests. Nowhere in the statute, however, is a distinction drawn between typical and atypical cases or normal and abnormal requests, and we decline to speculate as to what a typical case should look like under the PIA, absent specific

---

[6] The suit would be barred even if the District were to withdraw its request for injunctive relief and seek only a modified, court-ordered procedure to apply to the Lovelaces' requests. The effect under that scheme would be to remove the Lovelaces from the system created by the PIA, withholding information specifically from *them* that would ordinarily be made available under the statute.

10

statutory guidelines. We reiterate that the purpose of the PIA is to serve the interests of the public, "not the interests of bureaucratic expediency." *Abbott*, 109 S.W.3d at 121. Judicial restraint should be exercised where the creation of new remedies and limitations on the rights of requestors frustrates legislative mandates and undermines the purposes of open government.[7]

In its second point of error, the District argues that interpreting section 552.324 to bar its suit is tantamount to finding that the section abrogates its common-law rights. A statute that deprives a person of a common-law right will not be extended beyond its plain meaning or applied to cases not clearly within its purview. *Satterfield v. Satterfield*, 448 S.W.2d 456, 459 (Tex. 1969).

Section 552.324 unequivocally provides, "*the only suit* a governmental body or officer for public information may file seeking to withhold information from a requestor is a suit that is filed in accordance with Sections 552.325 and 552.353 and that challenges a decision by the attorney general issued under Subchapter G." Tex. Gov't Code Ann. § 552.324(a) (emphasis added). The plain meaning of this provision is that no other suit may be filed by a governmental body seeking to withhold information from a requestor, and suits against the requestors themselves are expressly prohibited. *See id.* §§ 552.324(a), .325(a). Given that the District's suit is one seeking to withhold information filed against the requestor, it is within the purview of the statute. We therefore hold that a governmental body's right to bring suit for common-law causes of action against a requestor of

_____

[7] We also note that the legislature has already begun to implement additional safeguards under the PIA in apparent response to the concerns of this sort of misuse voiced by governmental bodies. *See, e.g.*, the "36-hour rule," Act of May 27, 2007, 80th Leg., R.S., H.B. 2564, § 1 (to be codified at Tex. Gov't Code Ann. § 552.275) (effective Sept. 1, 2007) (allowing governmental bodies to establish reasonable time limits on the amount of personnel time spent producing or providing copies of public information, not less than 36 hours in a 12-month period).

public information has been abrogated in the event that the suit seeks to withhold information in violation of the prescribed procedures of section 552.324.[8]

We further hold that the trial court did not err in refusing to allow the District to amend its pleadings, as the District contends in its third point of error. "A plaintiff deserves a reasonable opportunity to amend unless the pleadings affirmatively negate the existence of jurisdiction." *Texas A&M Univ. Sys. v. Koseoglu*, 2007 Tex. LEXIS 838 at *7-8 (Tex. 2007); *see also Harris County v. Sykes*, 136 S.W.3d 635, 639 (Tex. 2004). "If the pleadings affirmatively negate the existence of jurisdiction, then a plea to the jurisdiction may be granted without allowing the plaintiff an opportunity to amend." *Save Our Springs Alliance v. City of Austin*, 149 S.W.3d 674, 686 (Tex. App.—Austin 2004, no pet.). Because the PIA prohibits the District from filing suit against the requestors in an attempt to withhold public information, the District's pleadings affirmatively demonstrate an absence of subject-matter jurisdiction. We overrule the District's third point of error.

---

[8] Our holding precludes both of the District's common-law causes of action. Apparently subsumed within its general allegation that the Lovelaces' conduct is a common-law public nuisance and an abuse of governmental process, however, is the District's claim that the Lovelaces misused the District's and the SBEC's complaint procedures. In its brief, the District states, "the District's position was that the Lovelaces' overall approach to requesting documents – the massive number of often simultaneous requests . . . and the *internal and external complaints* filed under and related to the TPIA – was all part of a concerted effort to harass the District and its employees" (emphasis added). The District did not brief the "misuse of complaint procedures" issue as though it offers a separate basis for subject-matter jurisdiction. Any argument that the District has a common-law claim for public nuisance or abuse of governmental process because of the Lovelaces' misuse of the complaint procedures (unrelated to the PIA) is therefore waived. *See* Tex. R. App. Proc. 38.1(h); *see also GSC Enters., Inc. v. Rylander*, 85 S.W.3d 469, 474 (Tex. App.—Austin 2002, no pet.).

*Sanctions*

The Lovelaces argue that they are entitled to attorney's fees under the sanctions provisions of rule 13 of the Texas Rules of Civil Procedure and either section 9.012 or 10.004 of the civil practice and remedies code and that the trial court abused its discretion in failing to award them attorney's fees.

*Rule 13*

The Lovelaces allege that the District's suit was groundless, frivolous, brought in bad faith or for the purposes of harassment, and brought for an improper purpose. Under rule 13, "the signatures of attorneys or parties constitute a certificate by them that they have read the pleading, motion, or other paper; that to the best of their knowledge, information, and belief formed after reasonable inquiry the instrument is not groundless and brought in bad faith or groundless and brought for the purpose of harassment." Tex. R. Civ. P. 13. Courts may, under rule 13, "impose sanctions against parties filing frivolous claims to deter similar conduct in the future and to compensate the aggrieved party by reimbursing the costs incurred in responding to baseless pleadings." *Scott & White Mem'l Hosp. v. Schexnider*, 940 S.W.2d 594, 596-97 (Tex. 1996).

"'Groundless' for purposes of this rule means no basis in law or fact and not warranted by good faith argument for the extension, modification, or reversal of existing law." Tex. R. Civ. Proc. 13; *see Hartman v. Urban*, 946 S.W.2d 546, 551 (Tex. App.—Corpus Christi 1997, no writ). To determine if a pleading was groundless, that is, filed for an improper purpose, the trial court must objectively ask whether the party and counsel made a reasonable inquiry into the legal and factual basis of the claim at the time the suit was filed. *See Loeffler v. Lytle Indep. Sch.*

13

*Dist.*, 211 S.W.3d 331, 348 (Tex. App.—San Antonio 2006, pet. denied). A trial court may not base rule 13 sanctions on the legal merit of a pleading or motion. *Emmons v. Purser*, 973 S.W.2d 696, 700 (Tex. App.—Austin 1998, no pet.). Merely filing a motion or pleading that the trial court denies does not entitle the opposing party to rule 13 sanctions. *Id.*

The Lovelaces argue that the District's suit was groundless because a suit brought by a school district for common-law public nuisance has no basis in law or in fact. However, as the District points out, such a suit has been recognized in Texas for at least one hundred years.[9] The Lovelaces further suggest that the District's suit was groundless because "abuse of governmental process is an imaginative attempt to create a new cause of action," and they urge us not to allow "the rubric of 'extension or modification' to become a loophole." While we acknowledge that abuse of governmental process is not a recognized cause of action in Texas, we view this aspect of the District's claim as a legitimate argument for the extension or modification of existing law or the establishment of new law, not an example of a situation "where the worst of the bar uses our honored system for ill motive without regard to reason and the guiding principles of law." *See Dyson Descendant Corp. v. Sonat Exploration Co.*, 861 S.W.2d 942, 951 (Tex. App.—Houston [1st Dist.] 1993, no writ). Although the District's suit is barred by statute, we do not believe that its argument is "so outside the pale of the law that it could be considered groundless." *See Hartman*, 946 S.W.2d at 552.

In reaching this conclusion, we find support from other courts who have considered

---

[9] *See Thompson v. Kimbrough*, 23 Tex. Civ. App. 350, 57 S.W. 328 (Dallas 1900, writ ref'd). In that case, a school district successfully sued the county for common-law public nuisance to prevent the establishment of a smallpox "pesthouse" near a school building. *Id.* at 329.

14

the issue of awarding rule 13 sanctions when a party has brought a statutorily barred claim. In *Hartman*, for example, the appellant homeowners had argued that a material misrepresentation in an erroneously filed subdivision plan was actionable under the Texas Deceptive Trade Practices Act (DTPA). *Id.* at 542. Although the plat containing the misrepresentation was created and filed before the DTPA was ever enacted, they claimed that the existence of the plat constituted a "continuing misrepresentation" and that they were therefore entitled to recovery under the DTPA. *Id.* at 550-51.

The court of appeals rejected this argument based on the plain language of the DTPA, which provides that it applies "only to acts or practices occurring after the effective date" of the statute. *Id.* at 550. Because the mere presence of a plat at the county clerk's office constituted neither an "act" nor a "practice" under the DTPA, the homeowners were required to show that either the drafting or the filing of the erroneous plat occurred while the statute was in effect. *Id.* at 551. Even though the court of appeals disagreed with the homeowners' argument, it nonetheless reversed the portion of the trial court's judgment awarding sanctions against the homeowners from bringing a groundless claim. *Id.* at 552. Noting that "'groundless' under the DTPA has the same meaning as 'groundless' under Rule 13 of the Texas Rules of Civil Procedure," the court held that awarding sanctions was an abuse of discretion under both rule 13 and the DTPA because the homeowners' claim constituted a good faith argument for the extension, modification, or reversal of existing law. *Id.* We reach the same conclusion with respect to the District's claims against the Lovelaces. Like the homeowners in *Hartman*, the District made a good faith argument for the extension or modification of the common law to claims arising out of PIA requests, despite statutory provisions that operate to bar its suit.

In arguing that the District's suit is frivolous, the Lovelaces contend that the District

15

failed to plead the elements or facts supporting a common-law nuisance claim. They claim that the District's pleadings generally alleged public nuisance without specifying whether its cause of action was for common-law or statutory public nuisance and were therefore deliberately vague. We disagree. As this court has explained, a public nuisance must amount to "an unreasonable interference with a right common to the general public." *Jamail v. Stoneledge Condo. Owners Ass'n*, 970 S.W.2d 673, 676 (Tex. App.—Austin 1998, no pet.). The District pled facts sufficient to show that the Lovelaces' conduct unreasonably interfered with the public right of District taxpayers to a public education for their children and that the excessive drains on District staff time and resources had affected all or a considerable part of the District community. There is no doubt that the Lovelaces had fair and adequate notice of the facts upon which the District was bringing its claim, sufficient to enable them to prepare a defense. Based on the Lovelaces' conduct that the District had detailed at great length in its pleadings and the nonfrivolous argument that the common-law public nuisance cause of action is applicable in this context, we cannot agree that the District failed to make a reasonable inquiry into the factual and legal bases of its claims at the time of filing suit. The Lovelaces are not entitled to sanctions under rule 13 merely because the District's claim was precluded by statute. *See Emmons*, 973 S.W.2d at 700.

The Lovelaces also argue that the District's suit was brought in bad faith for the purpose of harassment or to obtain an excuse to refuse to comply with the PIA. Courts presume that pleadings, motions, and other papers are filed in good faith, and the party moving for sanctions has the burden of overcoming this presumption. *GTE Commc'n Sys. Corp. v. Tanner*, 856 S.W.2d 725, 731 (Tex. 1993). Under rule 13, "bad faith" requires the conscious doing of a wrong for a dishonest,

16

discriminatory, or malicious purpose. *Stites v. Gillum*, 872 S.W.2d 786, 794-96 (Tex. App.—Fort Worth 1994, writ denied). A party acts in bad faith when discovery puts him on notice that his understanding of the facts may be incorrect and he does not make a reasonable inquiry into the facts before filing a pleading. *Monroe v. Grider*, 884 S.W.2d 811, 819 (Tex. App.—Dallas 1994, writ denied).

The Lovelaces have not overcome the presumption that the District filed this action in good faith. In fact, given the significant amounts of time and resources involved in responding to the Lovelaces' requests, coupled with the apparent fact that this is not an isolated incident affecting only one community, we are inclined to view the District's efforts as a good faith attempt to address a serious problem that poses severe and increasing costs to the detriment of Texas schoolchildren.[10] The Lovelaces do not allege that the District refused to respond to its requests for public information, and we have no reason to believe that this suit was brought by the District for the purpose of harassment or to seek an excuse for noncompliance with the PIA.[11] We hold that the trial court's refusal to award attorney's fees under rule 13 was not an abuse of discretion.

---

[10] Amicus Eanes Independent School District filed a brief in support of the District, discussing similar abuses and costs incurred in that district stemming from requests for public information pursuant to the PIA.

[11] The Lovelaces offer no support for their allegation that the District's suit was a strategic lawsuit against public participation, commonly known as a "SLAPP" suit. Black defines a SLAPP suit as "a suit brought by a developer, corporate executive, or elected official to stifle those who protest against some type of high-dollar initiative or who take an adverse position on a public-interest issue." *Black's Law Dictionary* 1393 (7th ed. 1999). The District contends that it has fully complied with each of the 2,274 requests for public information made by the Lovelaces, and the Lovelaces have not pointed us to any evidence to the contrary. Nor does the record contain any indication that the District intended to stifle the Lovelaces because of the position the Lovelaces have taken with respect to the "issue" of open government.

17

*Sections 9.012 and 10.004*

Awards of attorney's fees under the civil practice and remedies code require essentially the same findings as does rule 13. Section 9.012 allows a trial court to penalize a party for signing a petition that is groundless and brought in bad faith or for purposes of harassment or for other improper purposes. *See* Tex. Civ. Prac. & Rem. Code Ann. §§ 9.011-.012 (West 2002). To prevail under chapter 10, there must be little or no basis for the claims, no grounds for legal arguments, misrepresentation of law or facts, or legal action that is sought in bad faith. *See Herring v. Welborn*, 27 S.W.3d 132, 143 (Tex. App.—San Antonio 2000, pet. denied). Although rule 13 requires a party to have filed a groundless pleading brought in bad faith or a groundless pleading for harassment, sanctions under chapter 10 can be awarded if the suit was filed for an improper purpose, even if the suit was not frivolous. *See Alpert v. Crain, Caton & James, P.C.*, 178 S.W.3d 398, 411-12 (Tex. App.—Houston [1st Dist.] 2005, pet. denied); *compare* Tex. R. Civ. P. 13, *with* Tex. Civ. Prac. & Rem. Code Ann. § 10.001 (West Supp. 2007). However, having already decided that the District's suit was not groundless, frivolous, brought in bad faith, or brought for the purpose of harassment or to obtain an excuse for noncompliance with the PIA, we hold that the trial court did not abuse its discretion in refusing to award sanctions under these provisions of the civil practice and remedies code.

## CONCLUSION

Because we find that the legislature specifically precluded suits against requestors of public information and that the appropriate remedy for abuses related to the PIA must be provided by the legislature within the statutory framework, we affirm the trial court's dismissal. We further

18

hold that the denial of sanctions to the Lovelaces was not an abuse of discretion.

_____

Diane Henson, Justice

Before Chief Justice Law, Justices Waldrop and Henson

Affirmed

Filed:   November 29, 2007