# TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN

## NO. 03-12-00415-CV

**Bryan Berger and Lori Berger, Appellants**

**v.**

**Tony Flores, Jr., Appellee**

### FROM THE COUNTY COURT AT LAW NO. 2 OF COMAL COUNTY
### NOS. 2005-CV-0548 & 2010-CV-0445
### HONORABLE CHARLES A. STEPHENS II, JUDGE PRESIDING

## M E M O R A N D U M   O P I N I O N

This consolidated appeal arises from a dispute between Lori and Bryan Berger and Tony Flores, Jr. over the Bergers' proposed plans to build a lakefront home on a vacant lot next to Flores's home. Lori Berger challenges the trial court's summary judgment disposing of her claims against Flores for fraud, DTPA violations, and conspiracy, and both Lori and Bryan Berger appeal a sanctions order requiring them to pay $80,000 in attorney's fees incurred by Flores. We affirm the summary judgment and sanctions order, concluding that: (1) Lori Berger failed to challenge all grounds on which the summary judgment could have properly been granted; (2) the trial court was required to award attorney's fees against the Bergers on their DTPA claims because the totality of the evidence demonstrated no legal or factual basis for their DTPA claims; and (3) the trial court did not abuse its discretion in awarding attorney's fees against the Bergers as sanctions after finding their fraud and conspiracy claims groundless.

## BACKGROUND

Bryan and Lori Berger entered into an earnest-money contract to purchase a vacant lot on Canyon Lake with the intent to build a family vacation home there.[1] Before closing, the Bergers visited the lot and met their new neighbor, Tony Flores, who was moving into the house next door. Flores and his wife had just moved out of another home on Canyon Lake, which they had recently listed. Flores asked whether the Bergers would be interested in seeing the property, and they agreed. Flores's wife showed the Bergers the property, but they decided to continue with their plan of building on the vacant lakefront lot. During this first meeting with Flores, the Bergers testified that "no conversation of any significance" occurred.

Later that day, the Bergers' real-estate agent informed them that Flores had submitted a back-up offer on the vacant lot they had a contract on. Their real-estate agent also told them that the lot they were purchasing was burdened by a view easement benefitting Flores's next-door property. The Bergers decided to move forward with their purchase, closing on the lot in August 2004 and paying $220,000 in cash for the property. Flores offered to buy the lot from the Bergers after the closing, but they declined the offer.

In March 2005, approximately seven months after the closing, the Bergers submitted to the homeowners' association their proposed house plans for the vacant lot. Shortly thereafter, the president of the homeowners' association resigned, and Flores became the new president of the association. In April 2005, the Bergers received a letter from Flores stating that their plans had been received and would be forwarded to the Architectural Control Committee (ACC) once the

---

[1] Unless otherwise indicated, the facts cited herein are taken from the Bergers' pleadings and deposition testimony submitted as summary-judgment evidence.

2

committee was formed. Flores testified by deposition that after sending the letter, he then identified the members of the ACC and forwarded the Bergers' proposed plans to each member of the committee. Flores testified further that he was concerned that the Bergers' proposed home would block some of the existing views from his lake house and presented his concerns to the ACC members. The ACC ultimately voted to deny the Bergers' plans. Flores testified that he abstained from the vote.

On May 10, 2005, the Bergers received a letter from Flores stating that the ACC had denied their plans, without specifying the reason for the decision, and instructing the Bergers to contact Flores to discuss possible amendments to their plans. The Bergers then visited Flores at his home to discuss the ACC's denial of their plans. Lori Berger testified that Flores told them a reason their plans were denied was that "his family did not feel that it would be fair for them to lose any view from their house." Bryan Berger similarly testified that Flores told them the plans were denied because "their family decided that it's just not going to be fair that you all . . . build that house and all of a sudden now . . . my family does not have 100 percent view of the lake." Both Bergers testified that during this conversation Flores never told them what restriction, easement, or declaration their proposed home violated or on what authority the ACC could prevent them from building their home as proposed.[2]

---

[2] There is no evidence in the record as to whether the proposed plans violated the specific view easement benefitting Flores's property, which only affected a portion of the Bergers' lot. The restrictive covenants for the subdivision generally provided that no building may be erected without approval of the ACC as to "harmony of external design with existing structures, and as to location with respect to topography and finish grade elevation." In assessing proposed building plans, the covenants provided that the ACC "is guided by and controlled by this Declaration except when in their sole discretion good planning would dictate to the contrary."

After this conversation, the Bergers testified that they decided to buy another vacation property because they "didn't want to be neighbors with [Flores]" and were concerned that living next to him "would be an argumentative situation." On June 1, 2005, the Bergers entered into an earnest-money contract to purchase a different lake-house property on Canyon Lake, closing on the property at the end of the month. Lori Berger testified that she was happy with the purchase and that the lake house was exactly what they had wanted from a vacation home on Canyon Lake.

Two months after closing on their new lake home, the Bergers filed suit against Flores and the homeowners' association, seeking a declaration of their rights with regard to the vacant lot. Their attorney testified that the Bergers had sued Flores in his personal capacity because they had discovered—prior to filing suit—that the homeowners' association had forfeited its charter by failing to pay franchise taxes and was defunct. Although they no longer were interested in living next to Flores, the Bergers and their attorney testified that they pursued the lawsuit because they were still interested in building a "spec house" on the vacant lot.

In April 2006, however, the Bergers abandoned their building plans and listed the vacant lot for sale at $268,350. Lori Berger testified that they had decided to sell the lot because they wanted "out of the situation" and "it was time to move on." The day after listing the property, the Bergers received an offer for the listed price and entered into an earnest-money contract. Before closing, the Bergers testified that their realtor informed them that the purchasers of the lot—Lorrie and Eduardo Tijerina—were Flores's daughter and son-in-law and that Flores was involved in the financing of the loan. The earnest-money contract had provided that the sale of the lot was contingent upon the Bergers settling or dismissing their declaratory-judgment suit prior to closing. Upon learning that they were selling the property to Flores's daughter, the Bergers

4

demanded that the condition be dropped from the contract. The Tijerinas agreed to the amendment and closed on the lot in July 2006. The Bergers had owned the lot for less than two years, had made no improvements, and sold the property for $48,350 more than they had paid for it. Lori Berger agreed during her deposition that they had sold the lot for the "the amount of money [they] wanted."

On September 12, 2006, the Bergers amended their petition to drop the declaratory-judgment action and nonsuit the homeowners' association. The Bergers, however, decided to continue their suit against Flores and added claims for fraud by misrepresentation and violations of the Deceptive Trade Practices Act (DTPA). A later amended petition added the Tijerinas as defendants, alleging that they had conspired with Flores to prevent the Bergers from building their proposed home. Later, the Bergers dropped the conspiracy claim and nonsuited the Tijerinas. In their final amended petition, the Bergers reasserted their conspiracy claim against Flores and added a claim for fraud by nondisclosure.

In the midst of this litigation, the Bergers divorced in 2008. The divorce decree provided that Lori Berger was awarded as her sole and separate property "all interest of the parties in and to the litigation involving the Canyon Lake property" and that Bryan Berger was "divested of all right, title, interest, and claim in and to that property." In affidavits submitted to the trial court after the divorce, however, the Bergers and their attorney represented to the court that "all property matters [had] been settled in their divorce, and [they] had agreed to proceed to trial in this case as joint plaintiffs." Two years after the divorce, Flores obtained a copy of the sealed divorce decree after filing a motion to compel and moved to have Bryan Berger dismissed as a plaintiff in the suit.

Flores also moved for traditional and no-evidence summary judgment as to all of the Bergers' claims on several grounds, including that there was no evidence that Flores's actions

caused the Bergers to incur any actual damages. The trial court granted Flores's motion to dismiss Bryan Berger as a plaintiff in the suit based on the divorce decree divesting him of rights to the subject property. The trial court then granted summary judgment to Flores on all of Lori Berger's remaining claims without specifying the grounds for the ruling. The judgment became final when the trial court severed Flores's remaining counterclaim for attorney's fees, and the Bergers appealed the dismissal order and summary judgment in Cause No. 03-10-00874-CV.

After hearing argument on Flores's motion for attorney's fees, the trial court issued a sanctions order finding, in part, that the Bergers' fraud, conspiracy, and DTPA claims had been groundless and brought in bad faith or for purposes of harassment and that Bryan Berger had no standing to sue after his divorce. The sanctions order awarded Flores $80,000 in attorney's fees against the Bergers jointly and severally, as well as a $20,000 sanctions award against their attorney. The Bergers appealed the attorney's fee award in Cause No. 03-12-00415-CV. In these consolidated appeals, Lori Berger challenges the trial court's summary judgment of her claims, Bryan Berger challenges his dismissal from the suit, and both Bergers challenge the sanctions order.

## SUMMARY JUDGMENT

Prior to granting summary judgment, the trial court dismissed Bryan Berger as a plaintiff in the suit. As the sole plaintiff at the time of the summary judgment, Lori Berger challenges the trial court's dismissal of her claims for fraud by nondisclosure, conspiracy, and violations of the DTPA.[3] We review the trial court's summary judgment de novo. *Merriman v. XTO Energy, Inc.*, 407 S.W.3d 244, 248 (Tex. 2013). When, as here, a defendant moves for summary

---

[3] She raises no challenge to the trial court's summary judgment of her common-law fraud claims.

6

judgment on both traditional and no-evidence grounds, we first review the trial court's decision under the no-evidence standard. *See id.* (explaining that if nonmovant fails to produce legally sufficient evidence to meet burden for no-evidence motion, there is no need to analyze whether movant satisfied its burden under traditional motion). Under this standard, the plaintiff has the burden of presenting or identifying summary-judgment evidence raising a genuine issue of material fact on the challenged elements of her claims. Tex. R. Civ. P. 166a(i); *Mack Trucks, Inc. v. Tamez*, 206 S.W.3d 572, 582 (Tex. 2006). Here, the trial court's order does not specify the grounds for the ruling. Therefore, the order must be affirmed if any of Flores's grounds for summary judgment were meritorious. *See Merriman*, 407 S.W.3d at 248.

Flores's no-evidence motion for summary judgment asserted, among other grounds for dismissal, that there was no evidence of damages for any of the Bergers' claims. Damages were an essential element for each of the Bergers' claims for fraud by nondisclosure, conspiracy, and DTPA. *See Bradford v. Vento*, 48 S.W.3d 749, 755 (Tex. 2001) (fraud by nondisclosure requires proof that plaintiff was injured as result of relying on defendant's nondisclosure); *THPD, Inc. v. Continental Imports, Inc.*, 260 S.W.3d 593, 605 (Tex. App.—Austin 2008, no pet.) ("Proof of civil conspiracy requires proof of damages as the proximate result of the conspiracy.") (internal citation omitted); *see also* Tex. Bus. & Com. Code § 17.50 (consumer may maintain action where prohibited false, misleading, or deceptive act constitutes producing cause of economic damages or damages for mental anguish).

On Flores' assertion of no evidence of damages, the burden shifted to Lori Berger to raise a genuine issue of material fact on the damages element of her claims in order to avoid summary judgment. On appeal, however, Berger does not set forth an issue challenging the

7

summary judgment on the grounds that she raised a fact issue on damages, nor does she advance an issue generally attacking all grounds for the summary judgment. If an appellant does not challenge each possible ground on which summary judgment could have been granted, we must uphold the summary judgment on the unchallenged ground. *Star-Telegram, Inc. v. Doe*, 915 S.W.2d 471, 473 (Tex. 1995) ("When the trial court does not specify the basis for its summary judgment, the appealing party must show it is error to base it on any ground asserted in the motion."); *Malooly Bros., Inc. v. Napier*, 461 S.W.2d 119, 121 (Tex. 1970) ("The judgment must stand, since it may have been based on a ground not specifically challenged by the plaintiff and since there was no general assignment that the trial court erred in granting summary judgment."). Consequently, we must affirm the summary judgment on the unchallenged ground that Berger produced no evidence of damages. *See Malooly Bros., Inc.*, 461 S.W.2d at 121; *Rodriguez v. Morgan*, 584 S.W.2d 558, 559 (Tex. Civ. App.—Austin 1979, writ ref'd n.r.e.).

## ATTORNEY'S FEES

Flores moved for attorney's fees under both Texas Rule of Civil Procedure 13 and the DTPA. *See* Tex. R. Civ. P. 13; Tex. Bus. & Com. Code §17.50(c). After holding a hearing, the trial court found, in part, that the Bergers' DTPA, conspiracy, and fraud claims were groundless and brought in bad faith or for purposes of harassment and awarded $80,000 in attorney's fees against the Bergers and $20,000 in attorney's fees against their trial counsel. On appeal, the Bergers challenge the entire award, contending the trial court abused its discretion by awarding attorney's fees against both them and their attorney because their claims were brought in good faith and were not groundless. We review a trial court's award of attorney's fees under either Rule 13

or the DTPA for an abuse of discretion. *Nath v. Texas Children's Hosp.*, 446 S.W.3d 355, 361 (Tex. 2014); *Donwerth v. Preston II Chrysler-Dodge, Inc.*, 775 S.W.2d 634, 637 n.3 (Tex. 1989).

### A. Award Against Attorney

The Bergers challenge the entire sanctions award in their brief, including the $20,000 in attorney's fees awarded against their attorney. The notice of appeal, however, named the Bergers as the only appellants. We have held that when "an attorney and his client are both sanctioned, and both wish to appeal the sanctions order, . . . it is essential that both the client and the attorney be named as appellants in the notice of appeal." *Bahar v. Baumann*, No. 03-09-00691-CV, 2011 WL 4424294, at * 2 (Tex. App.—Austin Sept. 23, 2011, pet. denied) (mem. op.); *see also* Tex. R. App. P. 25.1(c) (party who seeks to alter trial court's judgment or other appealable order must file notice of appeal). Under this precedent, a client lacks standing to appeal sanctions imposed on her attorney. *See Bahar*, 2011 WL 4424294, at *2. Therefore, we do not have jurisdiction over the sanctions awarded against the attorney and will address the sanctions order only as it relates to the Bergers.

### B. Attorney's Fees Under the DTPA

The DTPA requires the trial court to award reasonable and necessary attorney's fees to defendants upon finding that the plaintiff's claim was groundless in fact or law, or brought in bad faith, or brought for purposes of harassment. Tex. Bus. & Com. Code § 17.50(c). To prevail on their DTPA claims, the Bergers were required to establish that: (1) they were consumers; (2) Flores violated a provision of the Act; and (3) this act constituted a producing cause of their injury. *See Amstadt v. United States Brass Corp.*, 919 S.W.2d 644, 649 (Tex. 1996); *Doe v. Boys Clubs of Greater Dallas, Inc.*, 907 S.W.2d 472, 478 (Tex. 1995).

9

The Bergers pleaded that they had consumer status for DTPA purposes based on their purchase of the vacant lot and that Flores was a proper defendant for their DTPA claims because he had a "tie-in connection and relationship to the Bergers' purchase of property . . . by performing services for enforcement of the covenants and restrictions." The Bergers further pleaded several laundry-list DTPA violations against Flores, including claims of misrepresentation, failure to disclose, and unconscionablity based on allegations that Flores had:

(1) caused confusion or misunderstanding as to the source, sponsorship, approval, or certification of goods or services by falsely representing the homeowners' association and ACC were legally organized entities;

(2) represented that goods or services had sponsorship, approval, characteristics, ingredients, uses, benefits, or quantities which they do not have or that a person had a sponsorship, approval, status, affiliation, or connection which he does not have by misrepresenting the authority of the homeowners' association and ACC;

(3) represented that an agreement confers or involves rights, remedies, or obligations which it does not have by representing that the restrictive convenants gave the ACC the authority to deny their plans;

(4) misrepresented his authority as an agent of the homeowners' association to negotiate the final terms of a consumer transaction by representing that he had the authority, through the ACC, to deny their building plans;

(5) failed to disclose information concerning goods or services which was known at the time of the transaction to induce the Bergers to enter a consumer transaction by failing to disclose his interest in the Bergers' building plans and his involvement in his daughter's purchase of their lot; and

(6) engaged in unconscionable conduct by delaying and interfering with the Bergers' attempts to construct a residence.

*See* Tex. Bus. & Com. Code §§ 17.46(b)(2),(5),(12),(14),(24); 17.50(a)(1),(3). The trial court awarded Flores attorney's fees for the DTPA claims, after finding the claims had no arguable basis

in fact or law and were not warranted by a good-faith argument for the extension, modification, or reversal of existing law.

On appeal, the Bergers challenge the award in two issues titled: (1) "The trial court erroneously ruled that [their] claims had no arguable basis in fact or law"; and (2) "The trial court erroneously ruled that [their] claims are not warranted by a good faith argument for the extension, modification or reversal of existing law." Under the first issue, however, the Bergers failed to provide any discussion of their arguments or citation of authorities. In the latter issue, the Bergers argued only that their attorney "had considerable experience in dealing with the causes of action alleged . . . and had successfully appealed two cases involving actions under the DTPA." There is no discussion or citation of authorities relevant to the present case.

Without any discussion of their arguments or citation to legal authority, the Bergers have waived these issues on appeal. *See* Tex. R. App. P. 38.1(i) (requiring brief to contain "clear and concise argument for the contentions made, with appropriate citations to authorities and to the record"); *City of Arlington v. State Farm Lloyds*, 145 S.W.3d 165, 167 (Tex. 2004) (A brief is sufficient and does not waive an issue if it "contains all points of error relied upon, argument and authorities under each point of error, and all facts relied upon for the appeal with references to the pages in the record where those facts can be found."); *Richard v. Cornerstone Constructors, Inc.*, 921 S.W.2d 465, 469 (Tex. App.—Houston [1st Dist.] 1996, writ denied) ("Although courts generally construe the briefing rules liberally, a point of error unsupported by the citation of any authority presents nothing for [an appellate court] to review.").

Regardless, even if the Bergers had not waived these issues on appeal, we would nevertheless conclude that the trial court did not abuse its discretion in awarding attorney's fees

11

against the Bergers for their failed DTPA claims. In their pleadings, the Bergers claimed consumer status based on their purchase of the vacant lot, *see* Tex. Bus. & Com. Code § 17.45 (defining "goods" to include real property), and claimed that Flores—as an officer of the homeowners' association—"had a tie-in connection and relationship" to this transaction. The DTPA grants consumers a cause of action only for conduct by the defendant occurring in connection with a consumer's transaction in goods or services. *Id*. § 17.50(a)(1); *see Amstadt*, 919 S.W.2d at 649. The Bergers, however, did not allege any complaints against Flores connected to a real estate transaction. *See Amstadt*, 919 S.W.2d at 649–50 (defendant's conduct is not actionable under DTPA unless it was committed in connection with plaintiff's transaction in goods or services). Rather, the Bergers testified unequivocally that Flores—who was not even a member of the homeowners' association at the time they purchased the lot—had made no actionable representations to them prior to their buying the lot and had fully disclosed his interest in purchasing the lot prior to their closing. As such, the evidence demonstrated there was no arguable basis in fact or law for concluding that any of Flores's alleged actions would trigger the DTPA, i.e., occurred in connection with the actual sale of real estate. *See id*.; *see also Splettstosser v. Myer*, 779 S.W.2d 806, 808 (Tex. 1989) (proper standard for determining whether claim is groundless for DTPA purposes is "whether the totality of the tendered evidence demonstrates an arguable basis in fact and law for the consumer's claims").[4]

---

[4] The Bergers' appeal does not argue for DTPA applicability based on their purchase of services from the HOA. "[N]o case exists in the State of Texas explicitly holding the payment of maintenance fees by a homeowner to the [a]ssociation is sufficient to be a purchase for DTPA purposes." *Riddick v. Quail Harbor Condo Assoc., Inc.*, 7 S.W.3d 663, 669 (Tex. App.—Houston [14th Dist.] 1999, no pet.). Because the Bergers do not address this issue in their appeal, we need not address it.

12

Moreover, the evidence demonstrated no arguable basis for concluding that Flores's actions, even if they constituted DTPA violations, were a producing cause of any damages to the Bergers. The summary-judgment evidence established that the Bergers sold their lot for a profit of $48,350 and that the only expenses that they had incurred were architect fees and other costs related to their proposed house plans. The Bergers, however, testified unequivocally that Flores had made no representations to them before they incurred these expenses. Moreover, with regard to the Bergers' decision to abandon their house plans, the summary-judgment evidence established that—at the time that they sold their lot—the Bergers had already discovered that the homeowners' association was defunct. Thus, there was no reasonable basis for concluding that any representation by Flores regarding the status of the homeowners' association was the producing cause of damages related to the Bergers' decision to abandon their house plans. Rather, the Bergers testified that they had decided to sell their lot because they "didn't want to be neighbors with [Flores]" and were concerned living next to him "would be an argumentative situation." Not wanting to live next to an undesirable neighbor who opposed your house plans does not create a cause of action under the DTPA on these facts. As such, we would hold that the trial court did not abuse its discretion by awarding Flores attorney's fees for these claims. *See* Tex. Bus. & Com. Code § 17.50(c).[5]

---

[5] Bryan Berger contends that he was improperly dismissed from the suit because his DTPA claims were not assignable, and therefore, he continued to have standing in the suit. Although causes of action as a general rule are freely assignable, the Texas Supreme Court has expressly held that "DTPA claims generally cannot be assigned by an aggrieved consumer to someone else" because such an assignment is against public policy. *PPG Indus., Inc. v. JMB/Houston Ctrs. Partners Ltd. P'ship*, 146 S.W.3d 79, 92 (Tex. 2004). Regardless, our conclusion that the Bergers' DTPA claims were groundless means there was nothing to assign. Further, the trial court properly awarded attorney's fees against both Bergers for asserting these groundless claims.

13

## C.    Rule 13 Sanctions

In addition to finding that the Bergers' DTPA claims were groundless, the trial court also found that the Bergers' conspiracy and fraud claims were groundless and brought in bad faith or for purposes of harassment.[6]  Texas Rule of Civil Procedure 13 provides that pleadings that are groundless and brought in bad faith or for purposes of harassment are sanctionable.  Tex. R. Civ. P. 13.  To determine if a pleading was groundless, the trial court must objectively ask whether the party and counsel made a reasonable inquiry into the legal and factual basis of the claim at the time the pleading was filed.  *Lake Travis Indep. Sch. Dist. v. Lovelace*, 243 S.W.3d 244, 254 (Tex. App.—Austin 2007, no pet.).  Unlike an award of fees under the DTPA, a trial court may not order sanctions on the issue of groundlessness alone.  *See Nath*, 446 S.W.3d at 362–63.  Rather, the filing in question must be groundless and "also either brought in bad faith, brought for the purpose of harassment, or false when made."  *Id*.  We first assess whether the trial court abused its discretion in finding the Bergers' conspiracy and fraud claims groundless, meaning with no basis in fact or law and not warranted by a good faith argument for a change in existing law.  *See* Tex. R. Civ. P. 13.

### 1.    Conspiracy

Civil conspiracy is generally defined as a combination of two or more persons to accomplish an unlawful purpose or to accomplish a lawful purpose by unlawful means.  *Massey*

---

[6] The Bergers contend the trial court abused its discretion by failing to make particularized findings of good cause justifying the sanctions.  *See* Tex. R. Civ. P. 13.  In fact, the trial court did set forth in its order several findings justifying the imposition of sanctions.  Regardless, we can find nothing in the record to indicate that the Bergers preserved error by objecting to the form of the order in the trial court.  *See* Tex. R. App. P. 33.1; *Robson v. Gilbreath*, 267 S.W.3d 401, 407 (Tex. App.—Austin 2008, pet. denied) (party waives error to particularity requirement of Rule 13 by failing to make timely objection).

*v. Armco Steel Co.*, 652 S.W.2d 932, 934 (Tex. 1983). Conspiracy is not an independent cause of action. *Tilton v. Marshall*, 925 S.W.2d 672, 681 (Tex. 1996). Rather, it is a derivative tort in that a defendant's liability for conspiracy depends on participation in some underlying tort for which the plaintiff seeks to hold at least one of the named defendants liable. *Id*.

Here, the only independent tort identified by the Bergers in support of their conspiracy claim was that Flores and members of his family had engaged in a civil conspiracy to violate the DTPA. As we have already found that the Bergers' DTPA claims were groundless, then—as a matter of law—their conspiracy claims are also groundless. *See Ernst & Young, L.L.P. v. Pacific Mut. Life Ins. Co.*, 51 S.W.3d 573, 583 (Tex. 2001) (summary judgment on fraud claim "necessarily disposes" of conspiracy claim premised on fraud). Further, there was no reasonable basis for concluding that the Bergers had suffered any damages as a proximate result of any civil conspiracy amongst the Flores family. Rather, the uncontroverted evidence shows that the Bergers closed on the sale of their lakefront lot with full knowledge that they were selling the lot to Flores's daughter and that they sold the lot for $48,350 more than they had paid for it the year before. For these reasons, we cannot conclude the trial court abused its discretion in finding the Bergers' conspiracy claims groundless.

### 2. Fraud by Nondisclosure

The elements of fraud by nondisclosure are: (1) the defendant failed to disclose facts to the plaintiff; (2) the defendant had a duty to disclose those facts; (3) the facts were material; (4) the defendant knew the plaintiff was ignorant of the facts and the plaintiff did not have an equal opportunity to discover the facts; (5) the defendant was deliberately silent when it had a duty to

speak; (6) by failing to disclose the facts, the defendant intended to induce the plaintiff to take some action or refrain from acting; (7) the plaintiff relied on the defendant's nondisclosure; and (8) the plaintiff was injured as a result of acting without that knowledge. *See Bradford*, 48 S.W.3d at 754; *Blankinship v. Brown*, 399 S.W.3d 303, 308 (Tex. App.—Dallas 2013, pet. denied); *7979 Airport Garage, L.L.C. v. Dollar Rent A Car Sys., Inc.*, 245 S.W.3d 488, 507 n.27 (Tex. App.—Houston [14th Dist.] 2007, pet. denied).

Regarding their claims for fraud by nondisclosure, the Bergers pleaded that Flores fraudulently failed to disclose his personal interest in the design and location of their home, his relationship to his daughter who purchased their lot, and his involvement in the financing of the loan. The Bergers testified that Flores expressly told them their plans were denied because their proposed home would block his views of the lake, and given that the Bergers' lot was burdened with a view easement benefitting Flores's property, there was no factual basis for their pleading that Flores had fraudulently failed to disclose his personal interest in their building plans. Further, the record shows that the Bergers—prior to closing on the sale of their lot—were amply aware of Flores's involvement in his daughter's purchase of their lot and made a profit on the sale. Thus, at the time the Bergers filed these claims, there was no reasonable basis for concluding that the Bergers had detrimentally relied on or suffered any damages as a result of any alleged nondisclosures by Flores. *See American Tobacco Co. v. Grinnell*, 951 S.W.2d 420, 436 (Tex. 1997). Thus, we cannot conclude the trial court abused its discretion in finding these claims groundless.[7]

---

[7] The trial court found limitations barred the Bergers' claims for fraud by nondisclosure. While limitations did bar claims related to the ACC's denial of the Bergers' plans, the Bergers' claims relating to the sale of their lot to Flores's daughter were filed within the four-year statute of limitations for fraud. *See* Tex. Civ. Prac. & Rem. Code § 16.004(a)(4).

16

### 3.    Common-Law Fraud

The elements of common-law fraud are: (1) a material representation; (2) which was false; (3) which was known to be false when made or was made recklessly as a positive assertion without knowledge of its truth; (4) which was intended to be relied upon; (5) which was relied upon; and (6) which caused injury. *See In re FirstMerit Bank, N.A.*, 52 S.W.3d 749, 758 (Tex. 2001); *DeSantis v. Wackenhut Corp.*, 793 S.W.2d 670, 688 (Tex. 1990). For their common-law fraud claims, the Bergers pleaded that Flores had made fraudulent representations regarding the requirements of the deed restrictions, the organizational structure of the homeowners' association, and his authority as president of the homeowners' association. In his deposition, however, Bryan Berger—who was the only party who spoke with Flores regarding the house plans—testified that Flores had never made any representation to him about the deed restrictions.

With regard to his claims that Flores was fraudulently representing to be the president of a nonexistent or defunct homeowners' association, there was no evidence that Flores was aware of the status of the homeowners' association. *See In re FirstMerit Bank*, *N.A.*, 52 S.W.3d at 758 (fraudulent representation occurs when speaker knows statement is false or makes statement recklessly without knowledge of truth). Moreover, even if there is a fact question as to his knowledge, there was no reasonable basis for concluding that the Bergers had incurred any damages in reliance on any statement made by Flores regarding the authority of the homeowners' association. *See id.* (fraud requires proof that party acted in reliance on false representation and thereby suffered injury). Rather, the record shows that the Bergers discovered the homeowners' association was defunct prior to selling their lot and did not rely on any statement by Flores regarding the authority

17

of the homeowners' association in deciding to abandon their house plans and to sell their lot.

Accordingly, at the time of filing, there was no legal or factual basis for the Bergers' fraud claims.[8]

We cannot conclude the trial court abused its discretion in finding the claims groundless.

### 4.       Bad Faith

Having found that the Bergers' claims were groundless, we must next determine

whether there was sufficient evidence to support the trial court's finding that the Bergers filed these

claims in bad faith or for purposes of harassment.  Generally, courts presume pleadings and other

papers are filed in good faith, and the party seeking sanctions bears the burden of overcoming this

presumption of good faith.  *GTE Commc'n Sys. Corp. v. Tanner*, 856 S.W.2d 725, 731 (Tex. 1993).

Bad faith does not exist when a party merely exercises bad judgment or is negligent; rather, bad

faith is the conscious doing of a wrong for dishonest, discriminatory, or malicious purposes.

*Lovelace*, 243 S.W.3d at 254.  Improper motive is an essential element of bad faith.  *Robson*

*v. Gilbreath*, 267 S.W.3d 401, 407 (Tex. App.—Austin 2008, pet. denied).  Further, "a court must

attempt to determine whether the offensive conduct is attributable to counsel only, to the party only,

or to both." *Nath*, 446 S.W.3d at 363.  Distinguishing between the conduct of counsel and a party

---

[8] The trial court's sanctions order additionally concludes that the Bergers lacked a justiciable interest in their declaratory-judgment claim after they sold their lot for a profit.  We conclude this finding misses the mark, as the vantage point for assessing sanctions is at the time the pleading was filed. *See Nath v. Texas Children's Hosp.*, 446 S.W.3d 355, 369 (Tex. 2014).  At the time the Bergers filed their declaratory-judgment action, they owned a vacant lot and properly sought a declaration as to their rights to build on the lot and dropped the claim after selling the lot. Regardless, it is not clear that the trial court's sanctions order awards attorney's fees for the declaratory-judgment action.  Flores sought over $130,000 in attorney's fees, including $20,000 in fees for the declaratory-judgment action.  The trial court's order, however, awards only $100,000 in fees.

may not be an easy matter in many instances, as the closeness between a litigant and his attorney may "lend an overall opacity to the relationship that renders it difficult to determine where a party's input ends and where an attorney's counsel begins." *Id.* "The point is, the sanctions the trial court imposes must relate directly to the abuse found." *TransAmerican Natural Gas Corp. v. Powell*, 811 S.W.2d 913, 917 (Tex. 1991).

At the sanctions hearing, the Bergers' lawyer testified as to his clients' motive for filing suit. The lawyer testified "that the only reason [the Bergers] sued was to try and be able to build a house. That's all they wanted. And if they couldn't do that, then they would move on. And that's what they did." In fact, however, the Bergers did not move on after buying another home and selling their lot. Rather, they sold their lot in June of 2005 but continued to pursue these claims until 2010, resulting in five years of litigation and attorney's fees.[9] At the sanctions hearing, the Bergers' attorney testified that he had advised them that damages were "a weak element" of their case. When asked during her deposition why they nevertheless had chosen to sue Flores, Lori Berger testified:

> Because, sir, I really cannot believe how we have been treated during this. . . . I can't believe that human beings can treat people the way that we've been treated.
>
> Lawyer: Any other specific reasons, ma'am, besides the way you were treated?
>
> Lori Berger: No, sir. I don't think it's fair. I don't think it's fair for anybody to be able to treat other people the way we've been dealt this. It's just not right . . . I would never do this to anyone, never.

---

[9] The Bergers did not challenge the excessiveness of the award at the trial court, nor do they raise this issue on appeal. As the Bergers have not challenged the excessiveness of the attorney's fees awarded, we cannot conclude a remand is appropriate to determine whether Flores bore some responsibility for the fees he incurred. *See Nath*, 446 S.W.3d at 372.

19

Against this backdrop and the logical inferences that flow from it, we cannot conclude the trial court abused its discretion in sanctioning the Bergers personally. This evidence supports a finding that the Bergers pursued this litigation based on personal animosity toward their former neighbor, rather than on the validity of any of the legal claims asserted. Accordingly, we must uphold the sanction because there was some evidence to support the trial court's finding that the Bergers brought these claims in bad faith or for purposes of harassment. Further, sanctioning the Bergers for attorney's fees arising from these groundless claims was demonstratively just, as there was a direct nexus between the sanction and the offensive conduct. *See TransAmerican Natural Gas Corp.*, 811 S.W.2d at 917 (due process requires direct nexus between offensive conduct, offender, and sanction award).

## CONCLUSION

For the foregoing reasons, we affirm the judgment of the trial court.

_____

Jeff Rose, Chief Justice

Before Chief Justice Rose, Justices Goodwin and Bourland

Affirmed

Filed: June 12, 2015

20